UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HASHIM MATTHEWS,

                              Plaintiff,

          v.                                                      9:18-CV-0855
                                                                  (TJM/CFH)

BARQ, et al.,

                              Defendants.
_____

APPEARANCES:

HASHIM MATTHEWS
03-A-3590
Plaintiff, Pro Se
Attica Correctional Facility
Box 149
Attica, NY 14011


THOMAS J. McAVOY
Senior United States District Judge

## DECISION AND ORDER

## I.    INTRODUCTION

          The Clerk has sent to the Court for review an amended complaint submitted by pro se

plaintiff Hashim Matthews asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983"),[1]

_____

          [1] After plaintiff filed his complaint, he filed a document he captioned as an "amended complaint" in
which he included new factual allegations about the Deputy Superintendent of Great Meadow Correctional
Facility ("Great Meadow C.F."), whom he named as a defendant.  Dkt. No. 14.  Thereafter, plaintiff filed a
document captioned as a "motion to amended [sic]" together with a document captioned as an "amended
complaint," which also included factual allegations about the Deputy Superintendent of Great Meadow C.F. and
named him as a defendant.  Dkt. No. 24; Dkt. No. 24-1.  Pursuant to Rule 15(a) of the Federal Rules of Civil
Procedure, a party may amend his complaint once as a matter of course, and may thereafter amend with leave
of the Court.  The Court therefore considers the complaint amended to included the allegations in the "amended
complaint" submissions.  For the sake of clarity, the Clerk is directed to file a copy of these submissions (Dkt.
No. 14; Dkt. No. 24-1) immediately following the signature page of the complaint (Dkt. No. 1), and docket these

together with an application to proceed in forma pauperis ("IFP"), a motion for preliminary injunctive relief, and a motion for appointment of counsel. *See* Am. Compl.; Dkt. No. 21 ("Fifth IFP Application"); Dkt. No. 22 ("Fourth Preliminary Injunction Motion"); Dkt. No. 23 ("Motion for Counsel").[2] Plaintiff, who is incarcerated at Attica Correctional Facility ("Attica C.F."), has not paid the filing fee for this action.

## II. IFP APPLICATION

Upon review, the Court finds that plaintiff's Fifth IFP Application (Dkt. No. 21) is properly completed and signed, and demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District. Dkt. No. 18. Accordingly, the Fifth IFP Application is granted.

## III. SUFFICIENCY OF THE AMENDED COMPLAINT

### A. Governing Legal Standard

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action

---

combined submissions (Dkt. No. 1, Dkt. No. 14, Dkt. No. 24-1) as the amended complaint. The Court will refer to these combined submissions as the amended complaint ("Am. Compl.") in this Decision and Order.

[2] Plaintiff filed with his original complaint a motion for a preliminary injunction and one page of an application to proceed IFP. *See* Dkt. Nos. 2, 3. Plaintiff's initial application to proceed IFP was not certified or accompanied by the inmate authorization form required in this District. As a result, plaintiff's initial application to proceed IFP was denied as incomplete and the action was administratively closed. Dkt. No. 4. Thereafter, plaintiff filed a second application to proceed IFP, together with a letter request for injunctive relief, and this action was re-opened. Dkt. Nos. 8, 9, 10. By Decision and Order filed October 23, 2018, plaintiff's second application to proceed IFP was denied as incomplete and his requests for injunctive relief (Dkt. Nos. 3, 8) were denied without prejudice based on his failure to comply with the filing fee requirements. Dkt. No. 11. Plaintiff then filed a third application to proceed IFP, together with his first "amended complaint" submission and a second motion for a preliminary injunction. Dkt. No. 13 ("Third Preliminary Injunction Motion"); Dkt. No. 14; and Dkt. No. 15 ("Third IFP Application"). Before the Court undertook a review of the Third IFP Application, plaintiff filed a fourth application to proceed IFP, together with an inmate authorization form. Dkt. No. 17 ("Fourth IFP Application"); Dkt. No. 18 ("Inmate Authorization Form"). By Decision and Order filed January 30, 2019, plaintiff's Third IFP Application and Fourth IFP Application were denied as incomplete, and plaintiff's Third Preliminary Injunction Motion was denied without prejudice based on plaintiff's failure to comply with the filing fee requirements. Dkt. No. 19. Plaintiff then timely and properly filed the Fifth IFP Application. Dkt. No. 21.

. . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[3] Thus, even if a plaintiff meets the financial criteria to commence an action in forma pauperis, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action in forma pauperis. *See id*.

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal

---

[3] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

citations omitted).  Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant- unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Id*. (internal quotation marks and alterations omitted).

### C.  Summary of the Amended Complaint

The amended complaint asserts alleged wrongdoing that occurred, if at all, while plaintiff was incarcerated at Eastern Correctional Facility ("Eastern C.F.") and Great Meadow C.F.  *See generally* Am. Compl.  The following facts are set forth as alleged by plaintiff in his amended complaint.

On March 20, 2015, defendant Corrections Sergeant A.J. Ciorciari from Eastern C.F. "was overseeing an unusual incident which had involved the plaintiff." Am. Compl. at 4. Defendant Ciorciari "ask[ed] plaintiff about the altercation several times[.]" *Id*. Plaintiff did not respond. *Id*. As a result, defendant Ciorciari "raise[d] his voice" and struck plaintiff in the head. *Id.* Defendant Ciorciari then called plaintiff homophobic and racial slurs and threatened to tell "gang members" about the crime for which plaintiff is "locked up" because they would "slice and dice" plaintiff if they knew. *Id.* at 4-5.

On March 23, 2015, plaintiff "receive[d] a misbehavior report issued by defendant Ciorciari, in which he threatened inmates into becoming his confidential informants against the plaintiff." Am. Compl. at 5. A "couple" of days later, defendant Corrections Sergeant Barq from Eastern C.F. interviewed plaintiff about a complaint he filed against defendant Ciorciari regarding "the attack on plaintiff." *Id.* During the interview, defendant Barq sought to "demonstrate" on plaintiff's body where plaintiff claimed he was hit by defendant Ciorciari while "simultaneously questioning him about the incident." *Id.* After "striking" plaintiff, defendant Barq stated, "I don't care if [defendant Ciorciari] did punch you [because] [a]s far as I'm concerned this didn't happen." *Id.*

On March 31, 2015, defendant Corrections Officer Rossy conducted a search of plaintiff's cell in plaintiff's absence. Am. Compl. at 6. As plaintiff was being escorted back to his cell, he was "warned" by the escorting official not to file a complaint because "the place was a mess." *Id.* Plaintiff arrived at his cell to see his personal belongings "scattered, shattered and destroyed." *Id.*

Defendant Rossy handed plaintiff a form to sign acknowledging items taken from the

cell.  Am. Compl. at 6.  Plaintiff "reluctantly" signed the form.  *Id.*  Among the items removed from plaintiff's cell were "personal letters[,]" which included a letter addressed to the Inspector General's Office that was stamped and sealed.  *Id.*  Plaintiff received "a ticket for this situation."  *Id.*

During plaintiff's disciplinary hearing for "this erroneous infraction," plaintiff explained why he was in possession of certain items he was charged with having stolen.  Am. Compl. at 6.  Off the record, the hearing officer stated, "I know you didn't steal that stuff."  *Id.*  The hearing officer then advised plaintiff that he was being found guilty of possessing contraband because of the letter addressed to the Inspector General.  *Id.*

On April 20, 2015, while plaintiff was "on transfer status," his belongings were placed in "departmental regulated draft bags" and catalogued by Corrections Officers Travis and Meinecke (not named as defendants).  Am. Compl. at 7.  The next morning, while plaintiff was in the "draft waiting area," defendant Barq advised plaintiff, in the presence of the transport officer (not a defendant), that plaintiff's "legal bag" would not be allowed on the transport bus.  *Id.*  The transport officer "intervened" and indicated that there was "plenty of room" for the bag.  *Id.*  Nonetheless, defendant Barq "commanded" the transport officer to remove plaintiff's legal bag from the bus.  *Id.*  Defendant Barq then handed plaintiff two disbursement forms and ordered him to fill them out if he wanted his legal bags.

After completing the disbursement forms, plaintiff asked defendant Barq when he would receive his legal bag.  Am. Compl. at 7.  Defendant Barq responded, "you'll get it when we mail it."  *Id.*  "Plaintiff insisted that he required possession of his legal bag due to pending litigation."  *Id.*  Defendant Barq then threatened plaintiff with a "ticket" and plaintiff boarded

6

the bus.  *Id.*

Plaintiff's legal bag did not arrive at "the next penitentiary" where plaintiff was transferred for "nearly a month[.]"  Am. Compl. at 7.  When the legal bag arrived, several items were missing.  *Id.*

At some point after plaintiff was transferred out of Eastern C.F., he was transferred to Five Points Correctional Facility ("Five Points C.F.").  Am. Compl. at 11.  During plaintiff's incarceration at Five Points C.F., defendant Deputy Superintendent Thoms oversaw inmate grievances and was assigned to perform "a 'quasi' welfare check" throughout the facility.  *Id.* Plaintiff provided defendant Thoms with "proof" that he was experiencing "property problems."  *Id.* at 16.  Because plaintiff had filed "various missives" concerning defendant Thoms and was housed in the "SOP unit[,]" defendant Thoms "never made any attempt to resolve [plaintiff's] issues."  *Id.* at 11.

At some point plaintiff was transferred from Five Points C.F. to Great Meadow C.F. Am. Compl. at 11.  Following plaintiff's arrival at Great Meadow C.F., he was "once again deprived of legal material which was not transported with other personal belongings."  *Id.* "Plaintiff filed a formal complaint regarding the matter, then was told to file a claim."  *Id*. at 16. "The security personnel . . . given charge to investigate the claim said plaintiff can only obtain recourse through a grievance."  *Id*. at 16-17.  "However, when the grievance supervisor conducted [his] investigation plaintiff was [again] instructed to file a claim."  *Id*. at 17.

Plaintiff contacted the Deputy Superintendent "in order to ascertain an actual answer[.]"  Am. Compl. at 17.  Upon doing so, plaintiff was advised by defendant Thoms that

"as a former resident of the S.O.P. unit he cannot request[ ] . . . any relief whatsoever." *Id.*[4]

Construed liberally, plaintiff alleges the following claims: (1) Eighth Amendment excessive force claims against defendants Ciorciari and Barq; (2) Fourteenth Amendment due process claims against defendants Ciorciari and Rossy based on the issuance of false misbehavior reports; (3) Fourteenth Amendment due process claims against defendants Barq and Thoms based on their failure to adequately investigate plaintiff's complaints; (4) First Amendment retaliation claims against defendants Ciorciari, Barq, Rossy, and Thoms; (5) a Fourth Amendment unlawful cell search claim against defendant Rossy; (6) a First Amendment access-to-courts claim against defendant Barq; (7) a First Amendment interference with mail claim against defendant Rossy; (8) destruction of property claims against defendants Rossy and Barq; (9) an Eighth Amendment conditions-of-confinement claim against defendant Thoms; and (10) Fourteenth Amendment equal protection claims against each of the defendants.[5]

Plaintiff seeks monetary damages as well as declaratory and injunctive relief. Am. Compl. at 9, 12-13.[6] For a complete statement of plaintiff's claims, reference is made to the

---

[4] Plaintiff identifies Great Meadow C.F. as the address where defendant Thoms is employed. Am. Compl. at 11, 16. As a result, the Court assumes for purposes of this Decision and Order that defendant Thoms was working at Great Meadow C.F. when he allegedly denied plaintiff's request for relief regarding missing property.

[5] Although plaintiff also purports to assert a Fifth Amendment "double jeopardy" claim against defendant Rossy and a Fifth Amendment claim against defendant Thoms, *see* Am. Compl. at 8, 11, the Court does not construe the amended complaint to assert a cognizable Fifth Amendment claim against any named defendant.

[6] To the extent plaintiff seeks "restoration of good time," such relief is not available to plaintiff in this action. *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 554 (1974) (habeas is the appropriate remedy for seeking restoration of good time credits lost as a result of prison disciplinary proceedings); *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) ("Because an action for restoration of good-time credits in effect demands immediate release or a shorter period of detention, it attacks the very duration of . . . physical confinement, and thus lies at the core of habeas corpus[.]" (internal citations and quotation marks omitted)).

amended complaint.

**C.    Nature of the Action**

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *Iqbal*, 556 U.S. at 676.  "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'"  *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).  "[V]icarious liability is inapplicable to . . . § 1983 suits."  *Iqbal* 556 U.S. at 676.

**1. Excessive Force Claims**

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials.  *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  This includes punishments that "involve the unnecessary and wanton infliction of pain."  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that

9

the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency."  *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).[7]

"To determine whether a defendant acted maliciously, several factors should be examined including, 'the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.'"  *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993)).

### (i) Ciorciari

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that a response to plaintiff's excessive force claim against defendant Ciorciari is warranted.  In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### (ii) Barq

Plaintiff alleges that defendant Barq "demonstrate[d]" on plaintiff's body where defendant Ciorciari struck him, while "simultaneously questioning him about the incident." Am. Compl. at 5.  The amended complaint lacks any details about the force used by

---

[7]  In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9).  The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

defendant Barq in "striking" plaintiff, the manner in which defendant Barq contacted plaintiff, or any injuries plaintiff suffered as a result of the interaction. Without such details, the amended complaint lacks allegations which plausibly suggest that defendant Barq's act of touching plaintiff was done maliciously to cause harm. *See Hudson*, 503 U.S. at 9 ("[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action."); *Cosby v. Russell*, No. 9:10-CV-0595 (TJM/DEP), 2012 WL 1514836, at *8 (N.D.N.Y. Feb. 8, 2012) ("The allegation that defendant Russell sat on plaintiff's legs after he complained of pain is insufficient to state a plausible deliberate indifference claim . . . [where] . . . [b]y plaintiff's own admission, he was non-compliant with orders . . . requiring that some modicum of force be applied"), *report and recommendation adopted by* 2012 WL 715250 (N.D.N.Y. Mar. 5, 2012); *Headley v. Fisher*, No. 06-CV-6331, 2008 WL 1990771, at *4 (S.D.N.Y. May 7, 2008) (inmate's allegation that corrections official "grabbed his shoulder, cursed in his face, slapped him twice and pushed him in his cell" after inmate was directed to do as the official told him was not sufficient to demonstrate that the official "acted maliciously and sadistically to cause harm rather than in a good faith effort to maintain or restore discipline").

Accordingly, plaintiff's Eighth Amendment claim against defendant Barq is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## 2. False Misbehavior Report Claims

It is well-settled that the issuance of a false misbehavior report does not state a constitutional claim for relief. *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (It is well settled that "a prison inmate has no general constitutional right to be free from being

falsely accused in a misbehavior report." (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d

Cir. 1986), *cert. denied*, 485 U.S. 982 (1988)); *accord, Pittman v. Forte*, No. 9:01-CV-0100,

2002 WL 31309183, at *5 (N.D.N.Y. July 11, 2002) (Sharpe, M.J.); *see also Santana v.

Olson*, No. 07-CV-0098, 2007 WL 2712992, at *2 (W.D.N.Y. Sept. 13, 2007) ("[T]he filing of

a false behavior report by a correctional officer does not state a claim for relief."); *Husbands

v. McClellan*, 957 F. Supp. 403, 406-07 (W.D.N.Y. 1997) (claim that plaintiff had contraband

placed in his cell and received a false misbehavior report, even if true, does not state a

constitutional violation).[8]  In addition, "[t]he filing of a false report does not, of itself, implicate

the guard who filed it in constitutional violations which occur at a subsequent disciplinary

hearing."  *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986) (rejecting prisoner's "but for"

argument as to guard who prepared misbehavior report but was not involved in Tier III

hearing) (citation omitted).

Accordingly, plaintiff's claims against defendants Ciorciari and Rossy based on them

allegedly issuing him false misbehavior reports are dismissed pursuant to 28 U.S.C. §

1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be

granted.

### 3.  Failure-to-Investigate Claims

"[T]he law is . . . clear that inmates do not enjoy a constitutional right to an

investigation of any kind by government officials."  *Pine v. Seally*, No. 9:09-CV-1198

(DNH/ATB), 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) (citing *Bernstein v. New York*,

---

[8]  A constitutional violation could occur in this situation if plaintiff were not provided adequate due process in the disciplinary proceeding, and then the claim is not based on the truth or falsity of the misbehavior report but instead on the conduct of the hearing itself.  *See Freeman*, 808 F.2d at 951; *see also Santana v. Olson*, No. 07-CV-0098, 2007 WL 2712992, at *2 (W.D.N.Y. Sept. 13, 2007).  In this case, plaintiff has not asserted a disciplinary due process claim.

591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (collecting cases)); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs*., 489 U.S. 189, 196 (1989) (The Due Process Clause "generally confers no affirmative right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."). "In order for a constitutional violation to have occurred, the investigation *itself* must have resulted in a deprivation of a constitutional right." *Pine*, 2011 WL 856426, at *9 (emphasis in original).

In this case, the amended complaint lacks any allegations which plausibly suggest that plaintiff was deprived of a constitutional right as a result of either defendant Barq's investigation of plaintiff's complaint against defendant Ciorciari, or defendant Thoms's refusal to investigate plaintiff's complaint of missing property.[9]  Accordingly, plaintiff's failure-to-investigate claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. Retaliation Claims

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*,

---

[9]  The law is equally well-settled that if an "official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation." *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008); *see also Young v. Kihl*, 720 F. Supp. 22, 23 (W.D.N.Y. 1989) ("[T]he wrong ... [must] have been capable of mitigation at the time the supervisory official was apprised thereof ... Without such caveat, the personal involvement doctrine may effectively and improperly be transformed into one of respondeat superior."); *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001) ("[A] 'failure to remedy' theory of liability is not available with respect to discrete and completed violations.").

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).  To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492).  "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

### (i)  Ciorciari

Liberally construed, plaintiff alleges that defendant Ciorciari assaulted him on March 20, 2015, and thereafter issued him a false misbehavior report, because plaintiff refused to provide defendant Ciorciari with information about his involvement in an altercation that defendant Ciorciari was "overseeing."  Am. Compl. at 4-5.  The Second Circuit recently held that "the First Amendment protects an inmate's refusal both to serve as a prison informant and to provide false information." *Burns v. Martuscello*, 890 F.3d 77, 89 (2d Cir. 2018) (noting that "[s]afety risks as well as legitimate concerns about personal loyalty play a role in the decision to divulge information and incriminate others").

Accordingly, at this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that this retaliation claim survives sua sponte review and requires a response.  In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive

motion.

### (ii) Barq

Plaintiff alleges that defendant Barq expressed indifference to plaintiff's complaint against defendant Ciorciari, and physically contacted plaintiff's body while questioning him about the incident. Am. Compl. at 5. Plaintiff further alleges that defendant Barq refused to allow plaintiff to travel with his legal bag during his transport to another facility approximately one month later, and thereafter "tamper[ed]" with the legal bag. *Id.* at 5, 7.

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that a response to this claim is warranted. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### (iii) Rossy

Liberally construed, the amended complaint asserts a retaliation claim against defendant Rossy based on allegations that he "destroyed" certain items of plaintiff's personal property during a cell search, confiscated a letter addressed to the Inspector General's Office, and issued plaintiff a misbehavior report for possessing contraband in response to seeing the letter addressed to the Inspector General's Office. Am. Compl. at 6.

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that this retaliation claim survives sua sponte review and requires a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### (iv) Thoms

Liberally construed, the amended complaint asserts a retaliation claim against defendant Thoms based on allegations that he ignored complaints made by plaintiff about unidentified "issues" during his incarceration at Five Points C.F., and refused to investigate plaintiff's complaint regarding missing legal material upon his arrival at Great Meadow C.F., because plaintiff "filed various missives" concerning defendant Thoms. Am. Compl. at 11.

As an initial matter, plaintiff's allegation that defendant Thoms failed to investigate his complaints, without more, does not satisfy the adverse action requirement. *See Houston v. Schriro*, No. 11-CV-7374, 2013 WL 4457375, at *10 (S.D.N.Y. Aug. 20, 2013) ("Ignoring grievances cannot support a First Amendment retaliation claim." (citing *Islam v. Goord*, No. 05-CV-7502, 2006 WL 2819651, at *6 (S.D.N.Y. Sept. 29, 2006) (prison official's failure to investigate prisoner's complaint is not sufficiently adverse to support First Amendment retaliation)). Furthermore, plaintiff does not identify when he filed "missives" concerning defendant Thoms in relation to when defendant Thoms allegedly ignored his complaints and denied his missing property grievance. Nor does plaintiff allege any facts which plausibly suggest that defendant Thoms was aware that plaintiff filed "missives" about him. Thus, there exists no basis for the Court to infer a casual connection between the alleged "missives" plaintiff filed concerning defendant Thoms and the alleged inaction by defendant Thoms with respect to plaintiff's complaints.

Accordingly, plaintiff's retaliation claim against defendant Thoms is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 5. Unlawful Cell Search Claim

"The Fourth Amendment is inapplicable to the unwarranted search of an inmate's prison cell, as inmates have no reasonable expectation of privacy in such a place." *Cucchiara v. Auburn Corr. Facility*, No. 9:18-CV-0605 (DNH/TWD), 2018 WL 3471280, at *3 (N.D.N.Y. July 19, 2018) (citing, *inter alia*, *Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("hold[ing] that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell ..." and thus the Fourth Amendment does not apply to cell searches); *Demaio v. Mann*, 877 F. Supp. 89, 95 (N.D.N.Y. 1995) ("Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights.")).

Accordingly, plaintiff's unlawful cell search claim against defendant Rossy is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 6. Access-To-Courts Claim

Interference with a prison inmate's legal mail "implicates [his] rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Davis*, 320 F.3d at 351. The "right of access to the courts," requires States "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *modified on other grounds, Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Bourdon v. Loughren*, 386 F.2d 88, 92 (2d Cir. 2004). "However, this right is not 'an abstract, freestanding right . . . .' and cannot ground a Section 1983 claim without a showing of 'actual injury.'" *Collins v. Goord*, 438 F. Supp. 2d 399, 415 (S.D.N.Y. 2006) (quoting *Lewis*, 518 U.S. at 351).

To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating that (1) the defendant acted deliberately, and (2) the plaintiff suffered an actual injury. *Lewis*, 518 U.S. at 353; *Konigsberg v. Lefevre*, 267 F. Supp. 2d 255, 261 (N.D.N.Y. 2003) ("Prison officials may only be held liable for such injury if they frustrated or impeded a prisoner's efforts to pursue a non-frivolous legal claim.").

"A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts." *Amaker v. Haponik,* No. 98-CV-2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999). Instead, a plaintiff must demonstrate "actual injury" by establishing that the denial "hindered his efforts" to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 349, 351-53; *see also O'Diah v. Fischer*, No. 9:08-CV-941 (TJM/DRH), 2012 WL 987726, at *12 (N.D.N.Y. Feb. 28, 2012) (recommending denial of motion to dismiss access-to-courts claim where plaintiff alleged that "he provided Hahn, Shaw, Swierk and Moscicki his legal mail at various times in June of 2008, but that they intentionally failed to send the mail out" and his "Article 78 case filed in Cayuga County was [subsequently] dismissed"), *report and recommendation adopted by* 2012 WL 976033 (N.D.N.Y. Mar. 22, 2012). "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" *Davis*, 320 F.3d at 352 (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995)).

The Supreme Court has stated that in order to allege a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint . . . ." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The underlying claim "must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* at 415-16. "[T]he

18

complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Id*. at 417-18 (footnote omitted).

Here, plaintiff alleges that defendant Barq denied him access to a legal bag prior to his transport to another facility, and that certain legal materials within the bag were subsequently removed. Am. Compl. at 7. Plaintiff, however, fails to allege any facts which plausibly suggest that he suffered an "actual injury" in any court proceeding as a result of these alleged acts of wrongdoing.

Accordingly, plaintiff's access-to-courts claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 7. Free-Flow-of-Mail Claim

"In addition to the right of access to the courts, a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis*, 320 F.3d at 351. A prisoner's mail may only be restricted to further "'one or more of the substantial governmental interests of security, order, and rehabilitation . . . [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved.'" *Id*. (quoting *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)). "The First Amendment protects prisoners' access to mail directly, unlike the right of access to courts, which protects prisoners' access to mail only derivatively and with respect to given claims." *Bellezza v. Holland*, No. 09-CV-8434, 2011 WL 2848141, at *6 (S.D.N.Y. July 12, 2011).

As courts have attempted to balance the competing interests implicated when facilities

19

place restrictions on prison mail, the courts have "consistently afforded greater protection to legal mail than to non-legal mail[.]" *Davis*, 320 F.3d at 351. "While a prisoner has a right to be present when his legal mail is opened, . . . an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Davis*, 320 F.3d at 351 (citations omitted). However, in *Washington v. James*, the Second Circuit found that "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Davis*, 320 F.3d at 351 (citing *Washington*, 782 F.2d at 1139); *see also Turner v. Safley*, 482 U.S. 78, 84-91 (1987) (prison regulations impinging constitutional rights must be "reasonably related to legitimate penological interests").

Here, plaintiff alleges that defendant Rossy confiscated "letters" during a cell search, including one addressed to the Inspector General's Office. Am. Compl. at 6. Plaintiff's allegation of a single instance of mail tampering, without more, is insufficient to plausibly suggest an ongoing practice of censorship unjustified by a substantial government interest. Moreover, the amended complaint is devoid of any allegations which plausibly suggest that the alleged tampering unjustifiably chilled plaintiff's right of access to the courts or impaired any legal representation received. *See Davis*, 320 F.3d at 351 ("[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation. Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'" (quoting *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *6 (S.D.N.Y. Mar. 29, 2001)); *Romano v. Lisson*, 711 Fed. App'x 17, 19 (2d Cir. 2017) (summary order) (affirming dismissal of free-flow-of-mail claim without prejudice where the complaint made "only one

reference" to tampering with legal mail); *Chavis v. Chappius*, No. 06-CV-543S, 2015 WL 1472117, at *14 (W.D.N.Y. Mar. 31, 2015) (dismissing free-flow-of-mail claim based on allegation that corrections official "confiscated a piece of his outgoing mail addressed to the Inspector General" because "[e]ven assuming plaintiff's letter to the Inspector General was legal mail, there are no factual allegations that DePasquale's action actually 'hindered [plaintiff's] efforts to pursue a legal claim' or otherwise prejudiced a legal action as required to state a claim for denial of access to the courts due to interference with legal mail . . . [and] plaintiff does not allege that this defendant 'regularly and unjustifiably' interfered with his personal mail" (internal citations omitted)); *Banks v. Annucci*, 48 F. Supp. 3d 394, 410-11 (N.D.N.Y. 2014) ("A single instance of mail tampering that does not result in the plaintiff suffering any damage is generally insufficient to support a constitutional challenge." (citing *Morgan v. Montanye*, 516 F.2d 1367, 1371 (2d Cir. 1975)); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 346 (N.D.N.Y. 2010) ("[C]ourts in the Second Circuit have never held an isolated incident of mail tampering to violate an inmate's First Amendment rights.").

Accordingly, plaintiff's free-flow-of-mail claim against defendant Rossy is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## 8. Destruction of Property Claims

The Supreme Court has held that the unauthorized intentional destruction of prisoner's property may not be the basis for due process claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *see also Rivera-Powell v. New York City Board of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) ("When the state conduct in question is

random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post deprivation remedy.").  "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action."  *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001); *Davis v. New York*, 311 Fed. App'x 397, 400 (2d Cir. 2009) (summary order) ("The existence of this adequate post-deprivation state remedy would thus preclude [plaintiff's] due process claim under § 1983 [for lost personal property].").

In the instant case, plaintiff claims that certain of his personal property was lost or destroyed following a cell search and his transfer out of Eastern C.F.  Am. Compl. at 6-7. Plaintiff has failed to allege that adequate post-deprivation remedies to recover the value of his destroyed property were unavailable.[10]  Thus, the amended complaint is devoid of any allegations which plausibly suggest that plaintiff was denied due process when his personal property was allegedly lost or destroyed.

Accordingly, plaintiff's destruction of property claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 9.  Conditions-of-Confinement Claim

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety."  *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441

---

[10]  To the extent plaintiff's claim is based on the destruction of legal materials, as stated above, plaintiff has failed to allege facts which plausibly suggest that he suffered an actual injury in any court proceeding.

U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981). To demonstrate that the conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy both an objective and subjective element. *See Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). A plaintiff must demonstrate that (1) the conditions of confinement resulted in "unquestioned and serious deprivations of basic human needs," *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985); *see also Jolly*, 76 F.3d at 480, and (2) the defendants acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 303-04 (1991).

Here, the amended complaint alleges that defendant Thoms "exhibited deliberate indifference towards plaintiff" by "utiliz[ing]" plaintiff's conviction to "create a volatile environment for the plaintiff, which was a primary reason for plaintiff's property mishaps." Am. Compl. at 11. These allegations are entirely conclusory. Moreover, the amended complaint is devoid of any allegations which plausibly suggest that plaintiff suffered an "unquestioned and serious deprivation" of a "basic human need" as a result of the actions of defendant Thoms.

Accordingly, plaintiff's Eighth Amendment claim against defendant Thoms is dismissed pursuant to 28 U.S.C. 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 10. Equal Protection Claims

The Equal Protection Clause requires that the government treat all similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr*., 473 U.S. 432, 439 (1985). Specifically, the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective

23

treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). To state a viable claim for denial of equal protection, a plaintiff generally must allege "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). In the alternative, under a "class of one" theory, plaintiff must allege that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003).

### (i) Ciorciari

Plaintiff alleges that defendant Ciorciari struck him in the head and then subjected him to racial and homophobic slurs while questioning him about his involvement in an altercation. Am. Compl. at 4-5. "Courts in this circuit and elsewhere have held that officers' use of racial epithets may be regarded as direct evidence of racial animus and, when combined with physical abuse or other unlawful actions, may establish an equal protection violation." *Ali v. Connick*, 136 F. Supp. 3d 270, 280 (E.D.N.Y. 2015); *see also Cole v. Fischer*, 379 Fed. App'x 40, 43 (2d Cir. 2010) ("When the verbal harassment and simultaneous physical abuse alleged in the amended complaint are considered together, we have little trouble concluding that plaintiff's allegations were sufficient to state a § 1983 claim for discrimination on the basis of race and religion."). Accordingly, at this stage of the proceeding, the Court finds that a response from defendant Ciorciari to plaintiff's equal protection claim is warranted. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed

24

dispositive motion.

### (ii) Thoms

Plaintiff alleges that defendant Thoms refused to clarify whether plaintiff should file a claim or grievance regarding missing property, and instead advised plaintiff that he could not seek "any relief whatsoever" for his missing property (after plaintiff had already done so) because he was "a former resident of the S.O.P. unit[.]"  Am. Compl. at 16-17.

It is unclear from the amended complaint upon which basis plaintiff claims he was unequally treated by defendant Thoms.  To the extent plaintiff claims that he was discriminated against based on his conviction as a sex offender, the law is well-settled that "[s]ex offenders do not comprise a suspect or quasi-suspect class for Equal Protection purposes."  *Travis v. New York State Div. of Parole*, No. 96-CV-759 (TJM/GLS), 1998 WL 34002605, at *4 (N.D.N.Y. Aug. 26, 1998); *see also Selah v. N.Y.S. Docs Com'r.*, No. 04-CV-3273, 2006 WL 2051402, at *6 (S.D.N.Y. July 25, 2006) ("Neither sex offenders nor the mentally ill are a suspect class warranting heightened equal protection scrutiny.").

Moreover, assuming that plaintiff has intended to assert an equal protection claim under a "class of one" theory, the amended complaint is devoid of any allegations that plaintiff was intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment.  *See Village of Willowbrook*, 528 U.S. at 564.  In fact, the amended complaint fails to identify any similarities between plaintiff and others, let alone adverse treatment experienced by plaintiff compared to persons similarly situated.  *See Thomas v. Pingotti*, No. 9:17-CV-0300 (GTS/DEP), 2017 WL 3913018, at *7 (N.D.N.Y. Sept. 6, 2017) ("Conclusory allegations of disparate treatment or a plaintiff's personal belief of discriminatory intent are patently insufficient to plead a valid claim under the Equal Protection

25

clause."); *see also Butler v. Bridgehampton Fire Dist*., No. 14-CV-1429, 2015 WL 1396442, at *4-5 (E.D.N.Y. Mar. 25, 2015) (dismissing the plaintiff's equal protection claim under the selective enforcement and class of one theories because the complaint "only discusse[d] the harmful actions [the defendants] took with respect to [the] [p]laintiff, but there [was] no discussion whatsoever of any similarities between [the] [p]laintiff and others"); *Tuitt v. Chase*, No. 9:11-CV-0776 (DNH/TWD), 2014 WL 2927803, at *8 (N.D.N.Y. June 27, 2014) ("While Plaintiff cursorily alleges that he 'suffered adverse treatment f[ro]m other inmates because he attempted to resolve . . . issues through the use of grievances,' he does not identify any particular similarly situated individuals who received different treatment. . . . Such cursory allegations do not meet the plausibility standard required by *Twombly* and *Iqbal*."); *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 434-35 (S.D.N.Y. 2013) (dismissing the plaintiff's equal protection claim under theories of selective enforcement and class of one where the plaintiff "simply" alleged that the defendants "singled out [the] plaintiff, in part, because of his exercise of constitutional rights" (internal quotation marks omitted)).

Furthermore, it appears that plaintiff's equal protection claim against defendant Thoms is based solely on defendant Thoms's alleged failure (because of the nature of plaintiff's conviction) to either confirm that plaintiff could file a claim for the value of his missing property or order an investigation into plaintiff's missing property. To the extent plaintiff's claim is based on the former, the amended complaint is devoid of any allegations which plausibly suggest that defendant Thoms interfered with plaintiff's ability to pursue post-deprivation remedies. Indeed, the amended complaint lacks any allegations regarding whether plaintiff even attempted to file an action in the New York State Court of Claims regarding his missing property.

To the extent plaintiff's claim is based on defendant Thoms's alleged failure to order an investigation into plaintiff's missing property, as noted, "the law is . . . clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Pine*, 2011 WL 856426, at *9; *see also Shell v. Brzezniak*, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005) ("inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures do [ ] not give rise to a cognizable § 1983 claim." (citing *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001)).  Thus, "the refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983."  *Shell*, 365 F. Supp. 2d at 370.

Accordingly, plaintiff's equal protection claim against defendant Thoms is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### (iii)  Rossy and Barq

The amended complaint lacks any allegations which plausibly suggest that either defendant Rossy or defendant Barq discriminated against plaintiff based on him belonging to an identifiable or suspect class, or intentionally treated him differently from others similarly situated.  Rather, plaintiff's equal protection claims against defendants Rossy and Barq are entirely conclusory.  *See Iqbal*, 556 U.S. at 678 (concluding that a pleading that only "tenders naked assertions devoid of further factual enhancement" will not survive sua sponte review) (internal quotations and alterations omitted); *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.");  *Thomas*, 2017 WL 3913018, at *7.

Accordingly, plaintiff's equal protection claims against defendants Rossy and Barq are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## IV.     FOURTH PRELIMINARY INJUNCTION MOTION

"In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'" *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)).

With respect to the first factor, "as a general matter, there is a presumption of irreparable harm when there is an alleged deprivation of constitutional rights." *V.W. by & through Williams v. Conway*, 236 F. Supp. 3d 554, 588 (N.D.N.Y. 2017) (internal quotation marks and citation omitted); *see also The Bronx Household of Faith v. Board of Education of the City of New York*, 331 F.3d 342, 349 (2d Cir. 2003) (holding that "where a plaintiff alleges injury from a rule or regulation that directly limits [a First Amendment right], the irreparable nature of the harm may be presumed").

With respect to the second factor, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is heightened. *Cacchillo v. Insmed, Inc*., 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks omitted)).  A mandatory preliminary injunction "should issue only upon a

clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo*, 638 F.3d at 406 (citing *Citigroup Global Mkts*., 598 F.3d at 35 n.4) (internal quotation marks omitted)); *see also Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (a plaintiff seeking a mandatory injunction must make a "clear" or "substantial" showing of a likelihood of success on the merits of his claim).

The same standards used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992); *Perri v. Bloomberg*, No. 06-CV-0403, 2008 WL 2944642, at * 2 (E.D.N.Y. Jul. 31, 2008). The district court has wide discretion in determining whether to grant preliminary injunctive relief. *Moore v. Consol. Edison Co. of New York, Inc*., 409 F.3d 506, 510 (2d Cir. 2005).

In this case, plaintiff seeks a temporary restraining order and preliminary injunction enjoining defendants "and all other persons acting in concert . . . with them from issuing plaintiff faulty facility rule violations, . . . honoring erroneous institutional infractions, . . . corraborating [sic] fabricated misbehavior reports . . . [and engaging in] wrongful confinement harassment, discrimination and retaliation[.]" *See* Fourth Preliminary Injunction Motion at 1.

Plaintiff's motion must be dismissed for several reasons. First, plaintiff is currently incarcerated at Attica C.F. *See* Fourth Preliminary Injunction Motion at 2. Neither plaintiff's pleadings nor the Fourth Preliminary Injunction Motion contain any allegations that plaintiff has suffered any wrongdoing at Attica C.F. Thus, plaintiff has failed to demonstrate a "clear and substantial" showing of a likelihood of success on any claim arising out of his

confinement at Attica C.F.  *See Amaker v. Fischer*, 453 Fed. App'x 59, 63-64 (2d Cir. 2011)

(affirming denial of motion for preliminary injunction based on lack of standing, noting that

"[t]o establish standing for a claim for the denial of access to the courts, an inmate must

show that he has suffered an 'actual injury' traceable to the challenged conduct of prison

officials[,]" and the plaintiff "failed to show that he suffered an 'actual injury' as a result of the

personal property limitation placed on him by DOCS's policy"); *Hancock v. Essential Res.,*

*Inc.,* 792 F. Supp. 924, 928 (S.D.N.Y. 1992) ("Preliminary injunctive relief cannot rest on

mere hypotheticals."); *Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F. Supp. 547, 561 (E.D.N.Y.

1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary

injunction.").

Second, none of the defendants named in this action are alleged to be employed at

Attica C.F., and none of the claims that remain in this action bear any relationship to

plaintiff's treatment at that facility.  *See Candelaria v. Baker,* No. 00-CV-0912, 2006 WL

618576, at *3 (W.D.N.Y. Mar. 10, 2006) ("To prevail on a motion for preliminary injunctive

relief, the moving party must establish a relationship between the injury claimed in the motion

and the conduct giving rise to the complaint." (internal quotation marks and citations

omitted)); *see also Scarborough v. Evans*, No. 9:09-CV-0850 (NAM/DEP), 2010 WL

1608950, at *2 (N.D.N.Y. Apr. 20, 2010) (motion for preliminary injunction alleging use of

excessive force and denial of medical care by non-parties denied where complaint alleged

denial of mental health care and proper conditions of confinement); *Lewis v. Johnston*, No.

9:08-CV-0482 (TJM/ATB), 2010 WL 1268024, at *3 (N.D.N.Y. Apr. 1, 2010) (denying motion

for injunctive relief based upon actions taken by staff at Great Meadow Correctional Facility

in 2010, where the complaint alleged wrongdoing that occurred at Franklin and Upstate

30

Correctional Facilities in 2006 and 2007); *Mitchell v. New York State Dep't of Corr. Servs*., No. 06-CV-6278, 2011 WL 5326054, at *3 (W.D.N.Y. Nov. 3, 2011) (denying plaintiff's request for preliminary injunctive relief because "the facts underlying the request for injunctive relief [were] essentially unrelated to the underlying facts of the claims in this action, except for the fact that they arise in the prison context"); *McClenton v. Menifee*, No. 05-CV-2844, 2006 WL 2474872, at *17 (S.D.N.Y. Aug. 22, 2006) (denying motion for preliminary injunction where the underlying claim "[was] not included in the complaint and there [was] no showing that the plaintiff [had] exhausted his administrative remedies with respect to [that] claim").

Third, to the extent that plaintiff seeks injunctive relief against unnamed staff at Attica C.F. who are not defendants in the present action, injunctive relief is available against non-parties only under very limited circumstances, none of which are present here. *See* Fed.R.Civ.P. 65(d)(2); *Doctor's Associates, Inc*. *v. Reinert & Duree, P.C.*, 191 F.3d 297, 302-03 (2d Cir. 1999); *United States v. Regan*, 858 F.2d 115, 120 (2d Cir. 1988); *see also In re Rationis Enterprises, Inc. of Panama*, 261 F.3d 264, 270 (2d Cir. 2001) ("A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction.").

Accordingly, for the foregoing reasons, plaintiff's Fourth Preliminary Injunction Motion (Dkt. No. 22) is denied.[11]

## V.    MOTION FOR COUNSEL

There is no right to appointment of counsel in civil matters. *Burgos v. Hopkins*, 14

---

[11]  Plaintiff is advised that concerns regarding his current conditions of confinement at Attica C.F. should be addressed through administrative channels at that facility and the New York State Department of Corrections and Community Supervision and, if necessary, by means of a properly filed action.

F.3d 787, 789 (2d Cir. 1994). Title 28 of United States Code Section 1915 specifically provides that a court may request an attorney to represent any person "unable to afford counsel." 28 U.S.C. § 1915(e)(1). Appointment of counsel must be done carefully in order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance. *Cooper v. A. Sargenti, Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989).

In *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion. In deciding whether to appoint counsel, the court should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider a number of other factors in making its determination. *See id.* at 1341 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)); *Sawma v. Perales*, 895 F.2d 91, 95 (2d Cir. 1990). Among these are

> [t]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues, and any special reason ... why appointment of counsel would be more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61. None of these factors are controlling, however, and each case should be decided on its own facts. *Id*.

This action was only recently commenced. The defendants that remain in this case after the Court's initial review have not yet responded to the allegations contained in plaintiff's amended complaint, and the only facts upon which this Court may base its decision as to whether this lawsuit is of substance are those portions of plaintiff's amended complaint wherein he states the facts surrounding his claims. Where a plaintiff does not provide a

Court with evidence, as opposed to mere allegations, relating to his or her claims, such party does not meet the first requirement imposed by the Second Circuit relative to applications seeking appointment of pro bono counsel. *See Harmon v. Runyon*, No. 96-CV-6080, 1997 WL 118379 (S.D.N.Y. Mar. 17, 1997).

Moreover, there is nothing in the record which demonstrates that plaintiff is not able to effectively pursue this action. While it is possible that there will be conflicting evidence implicating the need for cross-examination if this case proceeds to trial, "this factor alone is not determinative of a motion for appointment of counsel." *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61). Further, if this case survives a dispositive motion filed by defendants, it is highly probable that this Court will appoint trial counsel at the final pretrial conference. This Court is not aware of any special reason why appointment of counsel at this time would be more likely to lead to a just determination of this litigation.

In light of the foregoing, the Court denies plaintiff's Motion for Counsel without prejudice.

VI. **CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's Fifth IFP Application (Dkt. No. 21) is **GRANTED**. The Clerk shall provide the Superintendent of the facility that plaintiff has designated as his current location with a copy of plaintiff's inmate authorization form (Dkt. No. 18) and notify that official that plaintiff has filed this action and is required to pay to the Northern District of New York the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk provide a copy of plaintiff's inmate authorization form (Dkt.

No. 18) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the Clerk is directed to file a copy of the submissions captioned as "amended complaint" (Dkt. Nos. 14, 24-1) immediately following the signature page of the complaint (Dkt. No. 1) and docket these combined submissions as the amended complaint; and it is further

**ORDERED** that the following claims **SURVIVE** sua sponte review and require a response: (1) plaintiff's Eighth Amendment excessive force claim against defendant Ciorciari; (2) plaintiff's First Amendment retaliation claims against defendants Ciorciari, Barq, and Rossy; and (3) plaintiff's Fourteenth Amendment equal protection claim against defendant Ciorciari; and it is further

**ORDERED** that all remaining claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted;[12] and it is further

**ORDERED** that defendant Thoms is **DISMISSED without prejudice** as a defendant for the reasons set forth above; and it is further

**ORDERED** that, upon receipt from plaintiff of the documents required for service, the Clerk shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon defendants Ciorciari, Barq, and Rossy. The Clerk shall also forward a copy of the summons and complaint by mail to the Office of the New

---

[12] Should plaintiff seek to pursue any of the claims dismissed without prejudice, he must file a second amended complaint in accordance with Rule 15(a) of the Federal Rules of Civil Procedure. Any amended pleading, which shall supersede and replace the amended complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that defendants Ciorciari, Barq, and Rossy, or their counsel, file a response to plaintiff's claims against them as provided for in Rule 12 of the Federal Rules of Civil Procedure after service of process on them; and it is further

**ORDERED** that plaintiff's Fourth Preliminary Injunction Motion (Dkt. No. 22) is **DENIED without prejudice** for the reasons stated above; and it is further

**ORDERED** that plaintiff's Motion for Counsel (Dkt. No. 23) is **DENIED without prejudice** to renew at some future time for the reasons stated above; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel.  Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.**  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; plaintiff's failure to do so will result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

Dated: March 4, 2019

Thomas J. McAvoy
Senior, U.S. District Judge