**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────

HASHIM MATTHEWS,

                            Plaintiff,

       v.

BARQ, et al.,

                            Defendants.

No. 9:18-CV-855
(TJM/CFH)

─────────────────────────────

**APPEARANCES:**                         **OF COUNSEL:**

Hashim Matthews
03-A-3590
Sing Sing Correctional Facility
345 Hunter Street
Ossining, New York 10562
Plaintiff pro se

Attorney General for the              JORGE A. RODRIGUEZ, ESQ.
State of New York                 Assistant Attorney General
The Capitol
Albany, New York 12224
Attorney for Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

      Plaintiff pro se Hashim Matthews ("plaintiff"), an inmate who was, at all relevant

times, in the custody of the New York State Department of Corrections and Community

Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that

defendants Eastern Correctional Facility ("Eastern C.F.") Correction Sergeant ("Sgt.")

─────────────────────

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Paul Barg[2] ("Sgt. Barg"); Eastern C.F. Sgt. A.J. Ciorciari ("Sgt. Ciorciari"); and Eastern

C.F. Correction Officer ("C.O.") Rosita Rossy ("C.O. Rossy"), violated his constitutional

rights under the First, Eighth, and Fourteenth Amendments.  <u>See</u> Dkt. No. 26 ("Am.

Compl.").[3]  Presently pending before the Court is defendants' motion for summary

judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56.  <u>See</u> Dkt.

No. 61.  Plaintiff filed a response in opposition to the motion.  <u>See</u> Dkt. No. 65.

Defendants filed a reply, <u>see</u> Dkt. No. 66, and plaintiff filed a sur-reply.  <u>See</u> Dkt. No. 67.

For the reasons that follow, it is recommended that defendants' motion for summary

judgment be granted in its entirety.


## I. Background

The facts are reviewed in the light most favorable to plaintiff as the non-moving

party.  <u>See</u> subsection III., <u>infra</u>.  At all relevant times, plaintiff was incarcerated at

Eastern C.F.


### A. Plaintiff's Recitation of the Facts and Causes of Action

### 1. March 20, 2015 Altercation and March 23, 2015 Interview

On March 20, 2015, a physical altercation occurred between plaintiff and another

inmate.  <u>See</u> Am. Compl. at 4.  Plaintiff states that Sgt. Ciorciari "aske[d] [p]laintiff about

the altercation several times," and when "[p]laintiff d[id] not respond[,]" Sgt. Ciorciari

---

[2]  The correct spelling of this defendant's name is "Barg," not "Barq."  <u>See</u> Dkt. No. 61-5 at 1.  The Clerk of the Court is respectfully directed to amend the caption and the docket accordingly.

[3]  Upon initial review of the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. 1915A(b), Senior United States District Court Judge Thomas J. McAvoy dismissed "all remaining claims" without prejudice.  <u>See</u> Dkt. No. 25 at 34.

"raise[d] his voice and procee[ed] to strike [p]lainitff's head." Id. Plaintiff stated, "I do not want to be blackmailed." Id. Plaintiff alleges that Sgt. Ciorciari responded, "you can't change what you are right? You are a black male, right?" Id. Plaintiff further alleges that Sgt. Ciorciari stated, "Do you think you are the first faggot with a sex crime that is hiding out at ol'happy NAP? I hate f . . . ing fags like you! Damn near [85%] of this place is filled with homos and rapos[sic]!!" Id. at 4-5. Plaintiff posits that Sgt. Ciorciari then stated, "Pieces of s . . . like you are easy to get rid of. All I have to say to any of these [g]ang [m]embers is what you are locked up for and the rest is history." Id. at 5. In particular, plaintiff contends, Sgt. Ciorciari told him that the gang members would "slice and dice" him. Id. At the conclusion of their conversation, plaintiff argues that Sgt. Ciorciari stated, "Take this [b]lack fag back, I'm done with him." Id. at 5. On March 23, 2015, plaintiff alleges that Sgt. Ciorciari issued him a misbehavior report, which, according to plaintiff, "threatened inmates into becoming his confidential informants against . . . [p]laintiff." Id. Plaintiff states that he filed a complaint against Sgt. Ciorciari. See id. On March 23, 2015, Sgt. Barg interviewed plaintiff about Sgt. Ciorciari's misbehavior report. See id. Plaintiff states that Sgt. Barg "demonstrate[d] on [p]laintiff, while asking 'did he hit you here or here?" Id. Sgt. Barg told plaintiff, "I don't care if he did punch you. As far as I'm concerned this didn't happen!" Id.

Liberally construed, plaintiff contends that Sgt. Ciorciari violated his Eighth Amendment rights by using excessive force when questioning plaintiff about the March 20, 2015 incident. See Am. Compl. at 4. Plaintiff also argues that Sgt. Ciorciari violated his Fourteenth Amendment right to equal protection based on Sgt. Ciorciari's alleged use of force accompanied by homophobic remarks. See id. Moreover, plaintiff posits

that Sgt. Ciorciari violated his First Amendment rights by assaulting him and issuing a misbehavior report in retaliation for plaintiff refusing to provide information regarding the March 20, 2015 altercation.  See id. at 4-5.  In addition, liberally construed, plaintiff alleges that, on March 23, 2015, Sgt. Barg violated plaintiff's First Amendment rights by physically hitting him while "demonstrate[ing]" the alleged March 20, 2015 incident between plaintiff and Sgt. Ciorciari in retaliation for plaintiff filing a complaint against Sgt. Ciorciari.  See id. at 5.

### 2. March 31, 2015 Cell Search

Plaintiff states that, on March 31, 2015, C.O. Rossy conducted a cell frisk of plaintiff's cell, which plaintiff alleges resulted in the destruction of items of personal property.  See Am. Compl. at 6.  Plaintiff alleges that C.O. Rossy returned with "a form for [plaintiff] to sign," which she stated was for "stuff [she] took."  Id.  Plaintiff posits that C.O. Rossy informed him that "as long as you put down donate you won't be" "penalized in any way."  Id.  Plaintiff explains that C.O. Rossy issued him a ticket and "duplicates of the form along with contraband receipts, which catalogs all items that were taken."  Id.  Plaintiff states that, among the items taken, the "[m]ost significant . . . was one of the envelopes [which] contained an item [that] was supposed to be sent to the Inspector General's Office in lieu of another pending disciplinary proceeding," which plaintiff posits "was to serve as [his] proof."  Id.  Liberally construed, plaintiff alleges that C.O. Rossy violated his First Amendment rights by destroying his property, confiscating his letter to the Inspector General's Office, and issuing a misbehavior report for possessing

contraband in retaliation for plaintiff's letter addressed to the Inspector General's Office. See id.

### 3. April 21, 2015 Transfer to Five Points C.F.

Plaintiff states that, on April 21, 2015, he was on transfer status and had placed all of his personal items into draft bags.  See Am. Compl. at 7.  "The next morning as [p]laintiff was in the draft waiting area," plaintiff contends that Sgt. Barg informed plaintiff that he was "not going to let [plaintiff] have his [l]egal [b]ag on the bus." Id.  Despite the "Transport Officer interven[ing] by stating [that[ there [wa]s plenty of room on board [the bus] for it," Sgt. Barg "commanded the Transport Officer to remove . . . [p]laintiff's legal bag from the bus." Id.  Sgt. Barg then "hand[ed] . . . [p]laintiff two disbursement forms and order[ed] him to fill them out plus sign both if he want[ed] his [l]egal [b]ag." Id.  Plaintiff states that his "[l]egal [b]ag did not arrive at the next penitentiary until nearly a month later." Id.  Moreover, plaintiff posits that he discovered "[e]vidence of tampering with [his] [l]egal [b]ag," which he states was "due to the fact that it was shipped as not one [but] two separate bags." Id.  Plaintiff states that shipping his "[l]egal [b]ag" in two separate bags was "illegal because there are clearly established guidelines which prohibits this from occurring." Id.  Liberally construed, plaintiff alleges that Sgt. Barg violated his First Amendment rights by refusing to allow plaintiff to travel with his draft bag and "tampering" with his legal bag in retaliation for plaintiff's complaint against Sgt. Ciorciari.  See id. at 5, 7.

### II. Present Motion

### A. Defendants' Arguments and Evidence in Support of Motion for Summary Judgment

#### 1. Statute of Limitations

Defendants argue that plaintiff's claims are barred by the three-year statute of limitations governing Section 1983 claims. See Dkt. No. 61-20 at 26. Defendants note that the alleged constitutional violations complained of took place in March and April 2015, but that plaintiff did not commence this lawsuit until July 23, 2018—more than three years after the last of the alleged constitutional violations occurred. See Id. Therefore, defendants contend, plaintiff's claims must be dismissed as time-barred. See id.

#### 2. Exhaustion of Administrative Remedies[4]

Defendants contend that plaintiff failed to exhaust administrative remedies with respect to his "claims asserted against [Sgt.] Ciorciari and [C.O.] Rossy and the retaliation claim relating to the shoving incident with [Sgt.] Barg." Dkt. No. 61-20 at 25. In particular, defendants aver that "DOCCS has no record of [p]laintiff having filed any grievances relating to [Sgt.] Ciorciari's encounter with [p]laintiff on March 20, 2015, [C.O.] Rossy's cell search and alleged destruction of [p]laintiff's property on March 31, 2015, or [p]laintiff's claim of retaliation during the meeting with [Sgt.] Barg on or about March 23, 2015." Id. In support of their contention, defendants first point to the declaration of Anthony Black ("Black"), the Inmate Grievance Program ("IGP") Supervisor at Eastern C.F., who stated that "[p]laintiff's claims in this action are the

---

[4] Defendants raised failure to exhaust administrative remedies as an affirmative defense in their Answer to plaintiff's Amended Complaint. See Dkt. No. 41 at 5.

proper subject for a grievance under the IGP." Dkt. No. 61-17 at 3 ¶ 12. However, Black stated, "[u]on [his] review of the records maintained in the grievance office at Eastern C.F.," "[p]laintiff did not file any grievances related to the alleged incidents on March 20, 2015, March 23, 2015, and March 31, 2015." Id. at ¶ 13. Further, Black noted, his search of the IGP database "reflect[ed that] no grievances were filed at the Eastern [C.F.] IGP office by [p]laintiff in March or April of 2015." Id. at 3-4 ¶ 13; see id. at 6 (Black's email correspondence from May 10, 2019 stating, "I reviewed all records from [M]arch and April 2015 and there are no grievances or non-calendared contacts from [plaintiff] during that time."). Defendants also point to the declaration of Mandi Schultz ("Schultz"), the IGP Supervisor at Five Points Correctional Facility ("Five Points C.F."), who declared that plaintiff was transferred to Five Points C.F. on April 23, 2015. See Dkt. No. 61-18 at 3 ¶ 11. Schultz further stated that, "[u]pon review of the records maintained in the grievance office at Five Points C.F., [p]laintiff[] did not file any grievances related to the incidents alleged . . . to have occurred at Eastern [C.F.] on March 20, 2015, March 23, 2015, and March 31, 2015." Id. at ¶ 14.

In addition, defendants proffer the declaration of Rachel Seguin ("Seguin"), the Assistant Director of the IGP for DOCCS, whose "duties and responsibilities include maintaining records of appeals of grievances filed by inmates." Dkt. No. 61-19 at 1 ¶ 2. "Specifically," Seguin explained, she "oversee[s] the records that DOCCS maintains of appeals received by the Central Office Review Committee ("CORC"), which is the final level of administrative review in the IGP." Id. Seguin stated that "[c]omplaints or issues such as those described [in plaintiff's Amended Complaint] are the proper subject for a grievance under DOCCS grievance procedures as outline at 7 NYCRR § 701.1 *et seq.*"

Id. at 4 ¶ 11. Further, Seguin explained that, "[a]t the request of the Office of the New York State Attorney General, [she] conducted a diligent search of CORC records for all appeals received from facility-level grievance determinations pertaining to [p]laintiff," and attached a "true and correct copy of the computer printout from the CORC data base reflecting the results of that search, as of March 9, 2020, which was created in and maintained in the usual course of business at CORC." Id. at ¶ 15. Based on her review of plaintiff's CORC records, Seguin stated that "CORC did not receive, nor has it ever received, any appeals from [p]laintiff regarding his alleged staff misconduct claims on March 20, 2015; March 23, 2015; or March 31, 2015." Id. at 5 ¶ 16; see id. at 7-8 (plaintiff's CORC records between March 2009 and September 2019).

Defendants further note that, at plaintiff's deposition, in response to defense counsel's question as to whether plaintiff "file[d] any grievance with relation to the conduct of S[gt.] Ciorciari," plaintiff testified, "No, I did not." Dkt. No. 61-3 at 77-78. Similarly, when asked whether plaintiff filed a grievance about the incident involving Sgt. Barg allegedly shoving him on March 23, 2015, plaintiff testified, "No, I did not." Id. at 104. Moreover, plaintiff testified, "No, I did not[,]" when asked whether he "ever fil[ed] a grievance against [C.O.] Rossy with regard to the cell search." Id. at 174. In addition, the following exchange took place:

> Q. At the time, were you aware of the grievance procedure?
>
> A. Yes, I was.
>
> Q. But you elected not to file a grievance?
>
> A. That is correct.

Id.

**3. Merits**

**a. Excessive Force and Equal Protection Claims Against Sgt. Ciorciari**

Defendants contend that plaintiff's Eighth Amendment excessive force and Fourteenth Amendment Equal Protection claims against Sgt. Ciorciari are conclusory and must be dismissed.  See Dkt. No. 61-20 at 12.  Defendants note that plaintiff explicitly testified at deposition that Sgt. Ciorciari never struck him.  See id.  In particular, defendants point out that plaintiff testified at his deposition that Sgt. Ciorciari questioned him concerning the May 20, 2015 incident while plaintiff was in the nurses' station, and stated that Sgt. Ciorciari "didn't touch [him] at that point."  Dkt. No. 61-3 at 67.  Plaintiff testified that, after Sgt. Ciorciari questioned him at the nurses' station, the only other contact plaintiff had with Sgt. Ciorciari was when Sgt. Ciorciari issued him "a misbehavior report a few days later and [that] he was present during the hearing for the misbehavior report."  Id. at 76.  Defense counsel asked plaintiff, "did [Sgt. Ciorciari] ever strike you?"  Id.  Plaintiff replied, "[n]ot during those times, no, he never struck me."  Id.  Moreover, counsel asked plaintiff whether Sgt. Ciorciari struck him "at any other times[.]"  Id.  Plaintiff replied "[n]o, not him.  He didn't strike me."  Id.  In addition, defendants note that plaintiff stated, "[n]o, I'm not[,]" in response to defense counsel's question, "[a]nd you're not claiming you were injured as a result of your interactions with [Sgt.] Ciorciari."  Id. at 105.

Further, defendants observe that, in his declaration, Sgt. Ciorciari "den[ied] that [he] assaulted, threatened or used derogatory language toward plaintiff . . . on March 20, 2015[,] or at any other time."  Dkt. No. 61-9 at 3 ¶ 14.  Sgt. Ciorciari declared that, "[u]pon a review of a hearing transcript and hearing packet from a misbehavior report

9

issued against [p]laintiff relating to the altercation that occurred on March 20, 2015, [he] determined that [he] was not involved in the investigation that was conducted with relation to the fight involving [p]laintiff." Id. at 2 ¶ 10.  Moreover, Sgt. Ciorciari declared that, "[a] review of the hearing packet and memoranda written regarding the incident reveals that Sergeant Menard conducted the investigation into the fight on March 20, 2015." Id. at 2 ¶ 11.  "Thus," defendants aver, Sgt. Ciorciari "would not have been tasked with interrogating [p]laintiff with relation to the incident."  Dkt. No. 61-20 at 12 n. 2.  Sgt. Ciorciari also explained that, although he did not investigate the March 20, 2015 incident, he "did conduct an investigation into whether [p]laintiff violated the Standards of Inmate Behavior by soliciting sexual acts from other inmates," for which he "issued [plaintiff] a misbehavior report" on March 23, 2015.  Dkt. No. 61-9 at ¶ 12; see Dkt. No. 61-11 at 16 (March 23, 2015 misbehavior report).  Finally, defendants argue that, based on plaintiff's admission that Sgt. Ciorciari did not strike him, "he cannot establish a claim that his equal protection rights were violated," because even assuming that plaintiff's allegation that Sgt. Ciorciari made derogatory comments is true, without more, that conduct "does not rise to the level of a constitutional violation."  Dkt. No. 61-20 at 23.

In addition, defendants proffer the March 20, 2015, misbehavior report—issued by nonparty C.O. Arnott—which explained that, on that date, C.O. Arnott witnessed plaintiff physically attack another inmate by punching him.  See Dkt. No. 61-10 at 6. C.O. Arnott charged plaintiff with the following DOCCS rules violations: (1) fighting (100.13), creating a disturbance (104.13), and violent conduct (104.11).  See id. Following a disciplinary hearing on March 26, 2015, plaintiff was found guilty of creating

a disturbance and fighting.  See id. at 2.  Further, defendants included C.O. Arnott's

memorandum to Sgt. Menard in which he described the March 20, 2015 altercation

between plaintiff and the other inmate.  See id. at 9.  Moreover, defendants proffer Sgt.

Menard's memorandum titled "Fight Investigation . . . & Matthews" to nonparty Lt.

Sullivan, which included a summary of the March 20, 2015 misbehavior report, C.O.

Arnott's memorandum, and details of Sgt. Menard's interview of plaintiff in which plaintiff

stated that "he approached [the other] inmate . . . and a fight ensued" because plaintiff

wanted to "get even" and that plaintiff "threw the first punch in the fight."  Id. at 7.

### b. First Amendment Retaliation Claims

### i. Sgt. Ciorciari

Defendants argue that plaintiff has failed to establish that Sgt. Ciorciari took

adverse action against plaintiff, because plaintiff has admitted that Sgt. Ciorciari did not

use physical force against him.  See Dkt. No. 61-20 at 15.  Insofar as plaintiff alleges

that Sgt. Ciorciari threatened plaintiff that he could inform gang members about

plaintiff's sentence, defendants argue that such "vague intimations of unspecified harm,

even if true, do not rise to the level of adverse action for the purpose of First

Amendment retaliation claims."  Id. (citations omitted).  Further, to the extent that the

Amended Complaint may be read as alleging adverse action based on Sgt. Ciorciari's

purported homophobic remarks, defendants posit that "such derogatory comments,"

unaccompanied by physical force, "are insufficient to rise to the level of constitutional

violations."  Id. at 16.  Moreover, defendants note, Sgt. Ciorciari denied that he made

such comments in his declaration.  See id.; see also Dkt. No. 61-9 at 3 ¶ 14 (Sgt.

11

Ciorciari stating, "I deny that I assaulted, threatened or used derogatory language toward [p]laintiff[.]").

### ii. Sgt. Barg

Defendants argue that plaintiff has failed to establish a First Amendment retaliation claim against Sgt. Barg based on his alleged conduct of shoving plaintiff during an interrogation, refusing to allow plaintiff to carry his legal papers during his facility transfer, or tampering with plaintiff's property in retaliation for plaintiff's purported complaint against Sgt. Ciorciari.  See Dkt. No. 61-20 at 16.  As an initial matter, defendants point to Sgt. Barg's declaration, in which he explained that, "in the interest of maintaining professional working relationships in prisons among staff members, DOCCS Directive 4040 "requires that investigations of staff misconduct be carried out by 'higher ranking supervisory personnel."  Dkt. No. 61-5 at 2 ¶ 11 (quoting N.Y. Comp. Codes R. & Regs. tit. 7, § 701.8(d)(1)); see Dkt. No. 61-20 at 17 n.3.  Therefore, Sgt. Barg stated, because he and Sgt. Ciorciari held the same rank, contrary to plaintiff's allegations, he was not in a position to investigate any complaint plaintiff may have lodged against Sgt. Ciorciari because "only a staff member with the rank of Lieutenant or higher could have performed such an investigation."  Id. at ¶ 12.  Further, In any event, defendants note that Sgt. Barg denies shoving or retaliating against plaintiff at any time.  See id.; Dkt. No. 61-5 at 3 ¶ 21.

Moreover, with respect to plaintiff's claims that Sgt. Barg withheld and/or tampered with plaintiff's legal documents, defendants argue that "[p]laintiff has failed to establish that his protected activity was a substantial or motivating factor in [Sgt.] Barg's

actions." Dkt. No. 61-20 at 18. Defendants contend that, contrary to plaintiff's claims, Sgt. Barg refused to allow plaintiff to bring his draft bag on the bus during his facility transfer in compliance with DOCCS Directive 4917's bag limit. See id. at 20. Therefore, defendants aver, even if plaintiff could demonstrate that Sgt. Barg acted with retaliatory animus, his conduct would not give rise to a First Amendment retaliation claim because it "was justified by proper reasons." Id. at 21 (citation omitted). Further, defendants posit, Sgt. Barg neither tampered with plaintiff's draft bag nor directed other DOCCS personnel to tamper with plaintiff's property; rather, Sgt. Barg "simply directed facility staff to repack [p]laintiff's draft bag, which weighed 88 pounds, into two separate parcels to be mailed to [p]laintiff . . . in order to meet the weight limit requirement of 60 pounds set by the [USPS]." Id. Defendants point out that nonparty C.O. Ed Green ("C.O. Green"), a correction officer at Eastern C.F., stated in his declaration that he and nonparty Sgt. Leifeld "repacked all of the items in [p]laintiff's draft back into two different parcels and shipped them out to [p]laintiff . . . on May 1, 2015." Dkt. No. 61-16 at 2 ¶ 7. C.O. Green further "deni[es] that [Sgt.] Barg direct[ed] [him] to tamper with or destroy any property belonging to [p]laintiff, or otherwise retaliate against him in any way," and "den[ies] that [he] tampered with or destroy[ed] any property belonging to [p]laintiff." Id. at ¶¶ 8, 9.

### iii. C.O. Rossy

Defendants contend that plaintiff's First Amendment claim against C.O. Rossy must be dismissed "because he cannot establish that [she] took any adverse action to retaliate for protected activity." Dkt. No. 60-20 at 21. Defendants argue that plaintiff's

retaliation claim against C.O. Rossy is based solely on plaintiff's speculative and unsupported belief that she undertook the cell search at the direction of Sgt. Barg.  See id.  Defendants proffer the declaration of C.O. Rossy in which she states that, upon her review of the records relating to the misbehavior report she issued plaintiff, she "determined that she was ordered to conduct [the cell] search . . . by Lieutenant Simmons."  Dkt. No. 61-12 at 2 ¶ 9; see Dkt. No. 61-13 at 7 (C.O. Rossy's March 31, 2015 misbehavior report, stating that the cell search was "authorized by Lieutenant Simmons.").  Further, C.O. Rossy explained that the following contraband was recovered from plaintiff's cell during her search: 129 magazines, four letter size envelopes, an unwrapped prophylactic inside an envelope, and numerous articles of excess state-issued linens and clothing.  See id.  She indicated that plaintiff was "afforded the opportunity to dispose of the magazines and personal property via form #2068 (Authorization for Disposal of Personal Property)"; "the excess state[-]issued items were returned to inventory"; and the "envelope containing the profilactic [sic] and . . . envelopes for personal use only were secured in west wing court office contraband locker per Directive 4910A."  Id.  The Authorization for Disposal of Personal Property form, which contains plaintiff's signature, indicates that plaintiff authorized four excess personal shirts and 129 excess magazines to be destroyed by the facility.  See Dkt. No. 61-15 at 2.  Thus, defendants posit, plaintiff's retaliation claim against C.O. Rossy is belied by their admissible evidence.  See Dkt. No. 61-20 at 21-22.

Defendants also proffer documentation establishing that a Tier II disciplinary hearing relating to C.O. Rossy's misbehavior report was held between April 9 and April 10, 2015, and that plaintiff was found guilty of violations of DOCCS rules 113.20

14

(excessive/altered clothes), 113.22 (property in unauthorized area), and 113.23 (contraband), but not guilty of violations of rules 118.21 (flammable materials), 116.12 (counterfeiting or forgery), or 116.13 (vandalism/possession of stolen property).  See id. at 3.  Plaintiff appealed the hearing officer's determination on April 10, 2015.  See id. at 2.  On April 21, 2015, the superintendent affirmed the hearing officer's determination.  See id.

### 4. Qualified Immunity

Defendants contend that plaintiff's claims against Sgt. Ciorciari are barred by the doctrine of qualified immunity.  See Dkt. No. 61-20 at 27-28.  First, defendants contend that, because plaintiff acknowledges that Sgt. Ciorciari did not use force against him on March 20, 2015, and plaintiff's allegations that Sgt. Ciorciari made "derogatory comments and vague intimations of unspecified harm," "[s]uch actions do not rise to the level of constitutional violations."  Id. at 27.  Therefore, defendants posit, Sgt. Ciorciari did not violate any clearly established rights.  See id.  Similarly, defendants argue, plaintiff's contention that Sgt. Barg shoved him without causing any injury alleges only de minimis injury, which did not violate plaintiff's clearly established constitutional rights.  See id. at 28.  Therefore, defendants posit, Sgt. Barg is entitled to qualified immunity as to plaintiff's First Amendment retaliation claim concerning the alleged shoving incident.  See id.

### B. Plaintiff's Opposition

15

In opposition, plaintiff contends that "[t]here are genuine issues of material fact that preclude summary judgment."  Dkt. No. 65 at 2.  Plaintiff states that he "strongly disagree[s]" with paragraph 15 of defendants' statement of material facts, id. at 1, which states that "[p]laintiff did not suffer any injury as a result of his interaction with [Sgt.] Barg on or about March 23, 2015."  Dkt. No. 61-1 at 2.  Plaintiff states that "[t]he traumatic event has life[-]long ramifications."  Dkt. No. 65 at 1.  Plaintiff further contests paragraphs 21-23 of defendants' statement of material facts, which state that Sgt. Barg did not retaliate against plaintiff and did not tamper or remove or direct others to tamper or remove any of the property contained in plaintiff's draft bags when plaintiff transferred facilities.  See id.; Dkt. No. 61-1 at 3 ¶¶ 21-23.  Plaintiff posits that Sgt. Barg "did indeed take action and tampered with [his] property."  Dkt. No. 65 at 1.  Plaintiff contends that, "[i]n an unnumbered page of [Sgt.] Barg's declaration, titled Memo to D.S.S. Russo from C.O. P. Bennett it clearly states that."  Id.

Plaintiff further takes issue with paragraph 28 of defendants' statement of material facts, which reads, "[p]laintiff did not file a grievance with relation to the March 31, 2015 cell search or the allegedly lost or destroyed property."  Dkt. No. 61-2 at 4 ¶ 28.  Plaintiff argues that he "issued a complaint as part of his appeal to [C.O.] Rossy's infraction," which he states, "can be seen on an unnumbered page of [C.O.] Rossy's declaration."  Dkt. No. 65 at 2.  It appears that plaintiff is referencing his Appeal Form dated April 10, 2015.  See Dkt. No. 61-13 at 2.  Plaintiff states that, "[a]s for the exhaustion requirement of the PLRA, [p]laintiff has provided that by utilizing administrative remedy within disciplinary appeal mechanism."  Dkt. No. 65 at 2.

Plaintiff further contends that issues of fact exist as to Sgt. Barg's decision to not allow plaintiff to take his draft bag on the bus when he transferred facilities. See Dkt. No. 65 at 2. Plaintiff states that, although Sgt. Barg stated that he refused to allow plaintiff to take his bag on the bus because of its weight, which was 88lbs, "according to the actual rule 100lbs is the capacity for prisoner property." Id. In support of this argument, plaintiff points DOCCS Directive 4917, which is attached as an exhibit to Sgt. Barg's declaration, and states, in relevant part, "[d]raft bags measuring approximately 22" x 43" or having a 100lb. capacity designation may be used as long as they are serviceable." Dkt. No. 61-7 at 3; see Dkt. No. 65 at 2. Plaintiff also attached DOCCS Directive 4917, dated April 25, 2019, and highlighted the portion which states, "An inmate with excessive legal material may possess one additional draft bag of legal materials upon demonstrating that such material pertains to active legal cases by providing court names and case numbers." Id. at 6.[5]

In addition, plaintiff included a memorandum from Sgt. VanDeweert to C.O. Bennet regarding plaintiff's "Mailed Legal Work," dated June 18, 2015. Dkt. No. 65 at 4. The memorandum states that plaintiff left Eastern C.F. on April 21, 2015, and that Sgt. VanDeweert "transported 4 property bags plus one mail bag of legal work from SHU to the cage." Id. Further, the memorandum explains that plaintiff's "mail bag was over the 60lb weight limit and weighed 88lbs.[,]" so "Sgt. Barg instructed [Sgt. VanDeweert] to return the bag to SHU to be repacked into 2 bags." Id. "On 4/30/15 Sgt. Leifeld

---

[5]  Plaintiff also included a May 15, 2015 Order from the Eastern District of New York, which states, in relevant part, "[a]t the request of petitioner and on consent of respondent, any of Mr. Matthew's legal papers that are or were in his possession should accompany him to any new Department of Corrections facility to which he is transferred until such time as his case is closed." Dkt. No. 65 at 3. The undersigned notes that plaintiff's proceeding for a writ of habeas corpus in the Eastern District of New York was terminated on November 18, 2015. See Matthews v. Griffin, 1:14-CV-5256 (ARR).

contacted C.O. Green and instructed him to retrieve the mail bag from SHU and repack it into two bags because it was not done previously[,]" and that "[o]n 5/1/15 the 2 bags of legal were mailed from Eastern C.F. to Five Points C.F." Id. Plaintiff also proffers a DOCCS Claim Investigation Report for claim #370-0092-15, authored by Lt. DiCiarano at Eastern C.F., dated June 28, 2015, which states that Lt. DiCiarano called Five Points C.F. on June 18, 2015, "and spoke with C.O. Cheisman who confirmed that the mailed bags of [plaintiff's] legal work was [sic] received at Five Points on May 7, 2015." Id. at 5. Moreover, plaintiff proffers an additional DOCCS memorandum titled "Claim #370-0092-15" and dated June 6, 2018, from Sgt. VanDeWeert to Lt. DiCairano, which explains, in relevant part, that Sgt. VanDeWeert "spoke with reception officer P. Bennet who informed [him that plaintiff's] legal bag was not removed from the draft bus as [plaintiff] claims. It was overweight and additional to the allotted 4 bags of property." Id. at 7.

### C. Defendants' Reply

In reply to plaintiff's opposition and in further support of their motion for summary judgment, defendants contend that plaintiff has failed to raise a genuine issue of material fact. See Dkt. No. 66 at 2. Defendants aver that, insofar as plaintiff argues in opposition that he "strongly disagrees" about being injured during his interaction with Sgt. Barg, Dkt. No. 65 at 1, his statement is conclusory and directly contradicted by his deposition testimony in which he stated that he did not suffer injury as a result of his interactions with Sgt. Ciorciari or Sgt. Barg. See Dkt. No. 66 at 4 (citing Dkt. No. 63-1 at 67, 104-05). Further, defendants argue that the memoranda included as attachments to plaintiff's opposition do not support plaintiff's contention that Sgt. Barg tampered with

plaintiff's property or directed other DOCCS personnel to do so.  See id.  Rather, defendants contend, the memoranda "show[] that [Sgt.] Barg's only involvement . . . was directing C.O. Bennett to return the relevant draft bag to the [SHU] for the purpose of repacking the bag into two separate parcels to be mailed to [p]laintiff."  Id.  Defendants posit that the declarations of Sgt. Barg, and C.O. Green corroborate the information contained in the memoranda.  See id.

Defendants further argue that plaintiff has failed to establish that issues of fact exist concerning his failure to exhaust administrative remedies.  See Dkt. No. 66 at 5.  Defendants contend that plaintiff's "complaint against [C.O. Rossy]," which was "part of [his] appeal to the guilty finding of the misbehavior report [she] authored against [him]," does not establish that plaintiff adequately exhausted administrative remedies with respect to his claims against C.O. Rossy.  Id.  In particular, defendants contend that plaintiff's complaints against C.O. Rossy, as contained in his Appeal Form, are outside of the established three-step grievance process and, therefore, do not support his claim that he exhausted his administrative remedies, and reiterate that plaintiff testified at deposition that he did not file a grievance against C.O. Rossy.  See id. at 5-6.  Defendants also argue that "[p]laintiff's own submission[s] . . . establish that the relevant parcels containing his legal papers arrived at his new residence on May 7, 2015," and that the "copy of a directive that applies to the transfer of property" plaintiff included with his opposition papers "was not in effect during the times at issue in this litigation."  Id. at 6.[6]

---

[6]  Defendants point out that the Order from the Eastern District of New York plaintiff attached to plaintiff's opposition was "signed after [p]laintiff's materials were forwarded to him from Eastern [C.F]."  Dkt. No. 66 at 6.

### D. Plaintiff's Sur-Reply

In response to defendants' reply, plaintiff states that "[d]efendants' counsel is so obsessed with sending excessive amounts of '[m]emorandums'[sic] to this [C]ourt, just to bolster his [sic] case, which can be deemed condescending."  Dkt. No. 67 at 1. Plaintiff then reasserts his contention that Sgt. "Barg instructed a subordinate to remove [his] property for the purposes of unsealing and pilfering then sending whatever remnants towards [p]laintiff's next locale[,]" which plaintiff posits "is a direct, blatant disregard for departmental policy[.]"  Id.  Plaintiff states that Sgt. Barg's alleged actions in this regard "[m]ak[e]s all parties involved complicit with the violations that occurred." Id.  Further, liberally construed, plaintiff argues that, because "a [g]rievance cannot be used for a disciplinary proceeding[,]" "the only remedy is the appeal[,]" therefore making his complaint against C.O. Rossy "sufficient to satisfy the [e]xhaustion requirement."  Id. at 2.


### III. Legal Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The moving party has the burden of showing the absence of a genuine dispute of material fact by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion.  Celotex, 477 U.S. at 322; see

20

FED. R. CIV. P. 56(c).  A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 248, 250; see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. Gen. Motors Corp. (Motors Holding Div.), 758 F.2d 839, 840 (2d Cir. 1985) (per curium)).  Furthermore, "mere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (brackets omitted) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a *pro se* litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by *pro se* litigants, and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court is obligated to construe his pleadings liberally." (internal quotation marks and citations omitted)).

## IV. Analysis[7]

### A. Statute of Limitations

As stated above, pursuant to 42 U.S.C. § 1983, plaintiff alleges claims of First Amendment retaliation, Eighth Amendment excessive force, and Fourteenth Amendment Equal Protection. See Amen. Compl. at 4-7. Each of these claims is governed by a three-year statute of limitations. See Birch v. City of New York, 184 F. Supp. 3d 21, 26 (E.D.N.Y. 2016) ("[T]here is a three[-]year statute of limitations for First Amendment [c]laims under 42 U.S.C. § 1983."), aff'd, 675 F. App'x 43 (2d Cir. 2017) (summary order); Fahs Const. Grp., Inc. v. Gray, 725 F.3d 289, 292 (2d Cir. 2013) ("The

---

[7]  All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

statute of limitations on an Equal Protection claim brought in New York under 42 U.S.C. § 1983 is three years."); Smith v. New York City Dep't of Educ., 524 F. App'x. 730, 732 (2d Cir. 2013) (summary order) (applying three-year statute of limitations to First Amendment retaliation claims brought in New York State); see also Brown v. Smithem, No. 15-CV-1458 (BKS/CFH), 2017 WL 1155825, at *3 (N.D.N.Y. Feb. 28, 2017) (stating that a pro se inmate's "Eighth Amendment excessive force and First Amendment retaliation claims are subject to New York's three-year statute of limitations."), report and recommendation adopted, No. 9:15-CV-01458 (BKS/CFH), 2017 WL 1155827 (N.D.N.Y. Mar. 27, 2017).

As defendants point out, the alleged constitutional violations complained of took place on March 20, 23, and 31, 2015, and April 21, 2015, and plaintiff did not commence this lawsuit until July 23, 2018—more than three years after the last of the alleged constitutional violations occurred. See Dkt. No. 61-20 at 26. Further, defendants' admissible evidence establishes that plaintiff's March 26, 2015 disciplinary hearings relating to C.O. Arnott's March 20, 2015 misbehavior report, see Dkt. No. 61-10 at 6, and April 10, 2015 disciplinary hearing relating to C.O. Rossy's March 31, 2015 misbehavior report, fall outside of the three-year period preceding the date plaintiff commenced this action. See Dkt. No. 1. Moreover, plaintiff's alleged constitutional violations are based on discrete and isolated actions and, therefore, there is no basis to apply the continuing violation doctrine. See Smith, 524 F. App'x at 732 (holding that the plaintiff's "reliance on the continuing violation doctrine to avoid dismissal of [his First Amendment retaliation] claims [wa]s misplaced, as each of the allegedly retaliatory events was a discrete action, not an ongoing policy of retaliation." (internal quotation

marks omitted)); see also Syfert v. City of Rome, No. 6:15-CV-1149 (LEK/ATB), 2015 WL 6819168, at *7 (N.D.N.Y. Nov. 5, 2015) ("The continuing violation doctrine does not apply to discrete acts, even where those discrete acts are a part of a serial violation, but only to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." (internal quotation marks and citations omitted)).  Thus, it is recommended that plaintiff's claims be dismissed as untimely.

### B. Exhaustion

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration.  See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  The exhaustion requirement applies "'to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'"  Cucchiara v. Dumont, No. 9:18-CV-0182 (GLS/CFH), 2019 WL 2516605, at *4 (N.D.N.Y. Apr. 26, 2019) (quoting Porter v. Nussle, 534 U.S. 516, 532 (2002)).  Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as money damages.  See Porter, 534 U.S. at 524.  "To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated."  Cuadrado v. Brueault, No. 9:14-CV-1293

(DNH/CFH), 2015 WL 1606178, at *3 (N.D.N.Y. Apr. 8, 2015); see Jones v. Bock, 549 U.S. 199, 218 (2007).

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (internal quotation marks and citation omitted).  Until recently, courts in this District followed a three-part test established by the Second Circuit in Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004).  Under the test established in Hemphill, a plaintiff's failure to exhaust could be excused if a plaintiff established that his or her failure to exhaust was justified by "special circumstances." Id.  However, in Ross v. Blake, the Supreme Court held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, ____ U.S. ____ 136 S. Ct. 1850, 1862 (2016).  Thus, the special circumstances exception previously promulgated by the Second Circuit in Hemphill is no longer consistent with the statutory requirements of the PLRA.  See Williams v. Correction Officer Priatno, 829 F.3d 118, 123 (2d Cir. 2016).

However, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, ____ U.S. ____, 136 S. Ct. at 1858.  Under this exception, courts must determine whether administrative remedies were "available" to a prisoner.  Id.  The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738

(2001)).  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."  Id.  Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  Id. at 1860.

There is no genuine dispute that, at all relevant times, DOCCS had in place a well-established three-step administrative procedure for inmate grievances known as the IGP.  See N.Y. COMP. CODES R. & REGS. (7 N.Y.C.R.R.) § 701.5.  First, the inmate must file a complaint with an IGP clerk within 21 calendar days of the alleged incident.  See 7 N.Y.C.R.R. § 701.5(a)(1).  An IGP representative has 16 calendar days to informally resolve the issue.  See id. at § 701.5(b)(1).  If no informal resolution occurs, the Inmate Grievance Review Committee ("IGRC") must hold a hearing within 16 calendar days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing.  See id. at § 701.5(b)(2)(i)-(ii).  If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination.  See id. at § 701.5(c)(1).  If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to CORC within seven calendar days after receipt of the superintendent's determination.  See id. at § 701.5(d)(1)(i).  CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty 30 calendar days from the time the appeal was received."  Id. at § 701.5(d)(3)(ii).

"Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in a federal court."  Murray v. Goord, 668 F. Supp. 2d 344, 355-56 (N.D.N.Y. 2009).  On a motion for summary judgment, "[t]he defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action."  McMillian v. Walters, No. 9:16-CV-0277 (MAD/DJS), 2017 WL 8894737, at *2 (N.D.N.Y. Dec. 18, 2017), report and recommendation adopted, No. 9:16-CV-277 (MAD/DJS), 2018 WL 879270 (N.D.N.Y. Feb. 14, 2018).

Here, defendants have met their burden of establishing that no genuine issue of material fact exists concerning plaintiff's failure to exhaust available administrative remedies with respect to his claims against Sgt. Ciorciari and C.O. Rossy, and his retaliation claim against Sgt. Barg based on the alleged shoving incident on March 23, 2015.  In particular, defendants have established, through Black's declaration that "no grievances were filed at the Eastern [C.F.] IGP office by [p]laintiff in March or April of 2015."  Dkt. No. 61-17 at 3-4 ¶ 13.  Further, Schultz's declaration establishes that, "[u]pon review of the records maintained in the grievance office at Five Points C.F., [p]laintiff[] did not file any grievances related to the incidents alleged . . . to have occurred at Eastern [C.F.] on March 20, 2015, March 23, 2015, and March 31, 2015." Dkt. No. 61-18  at ¶ 14.  Moreover, Seguin's declaration and attached printout of plaintiff's CORC records establish that "CORC did not receive, nor has it ever received, any appeals from [p]laintiff regarding his alleged staff misconduct claims on March 20, 2015; March 23, 2015; or March 31, 2015."  Dkt. No. 61-19 at 5 ¶ 16; see id. at 7-8; see

also <u>Omaro v. Annucci</u>, 68 F. Supp. 3d 359, 364 (W.D.N.Y. 2014) ("It is well-established that an inmate who does not appeal to CORC has failed to exhaust his administrative remedies.").

In addition, to the extent plaintiff argues that he exhausted his administrative remedies with respect to his claims against C.O. Rossy by filing an administrative appeal to his partial guilty determination relating to C.O. Rossy's March 31, 2015 misbehavior report, his argument is misplaced.  <u>See</u> Dkt. No. 65 at 2.  In support of this argument, plaintiff relies exclusively on his Appeal Form dated April 10, 2015.  <u>See</u> Dkt. No. 61-13 at 2.  However, the disciplinary hearing process "is a separate, and unrelated, process from the IGP, and any complaints related to staff misconduct arising from the incident that prompted the disciplinary hearing must be grieved separately."  <u>Rambert v. Mulkins</u>, No. 11 CIV. 7421 (KPF), 2014 WL 2440747, at *2 n. 6 (S.D.N.Y. May 30, 2014) (citation omitted); <u>see</u> <u>McCoy v. Goord</u>, 255 F. Supp. 2d 233, 256 (S.D.N.Y. 2003) (holding that the plaintiff's "contention that he exhausted his administrative remedies . . . because he appealed a disciplinary hearing judgment [wa]s without merit.  An appeal of a disciplinary hearing determination does not satisfy the PLRA's exhaustion requirement.").

Moreover, no exception to the mandatory exhaustion requirement applies here.  As defendants note, plaintiff testified at deposition that he did not file grievances relating to the alleged incidents on March 20, 23, or 31, 2015, although he was aware that the grievance process was available.  <u>See</u> Dkt. No. 61-3 at 77-78, 104, 174.  Indeed, the record evidence demonstrates that the inmate grievance process, as set forth in 7 N.Y.C.R.R. § 701 *et seq.*, was available to plaintiff at Eastern C.F. and Five Points C.F.,

28

and plaintiff was well-versed in that process as evidenced by the numerous grievances he filed, including a grievance concerning his purportedly missing legal work as it related to his April 21, 2015 transfer.  See Dkt. Nos. Dkt. No. 61-18 at 6; 61-19 at 8.

Where a claim is dismissed for failure to exhaust administrative remedies, dismissal without prejudice is appropriate if the time permitted for pursuing administrative remedies has not expired.  See Berry v. Kerik, 366 F.3d 85, 87-88 (2d Cir. 2004).  However, if a prisoner has failed to exhaust available administrative remedies and the time in which to exhaust has expired, it is proper for the court to dismiss the complaint with prejudice because any attempt to exhaust would be futile. See id. at 88; see also Richard v. LeClaire, No. 9:15-CV-00006 (BKS/TWD), 2019 WL 5197041, at *9 (N.D.N.Y. May 6, 2019) ("Because [the p]laintiff's failure to exhaust is at this point incurable, the Court recommends that summary judgment for failure to exhaust administrative remedies be with prejudice.").  Here, more than five years have passed since the alleged incidents of March 20, 23, and 31, 2015, for which plaintiff chose not to file grievances pursuant to the procedure set forth in 7 N.Y.C.R.R. § 701 *et seq.*.  Consequently, in the alternative, it is recommended that plaintiff's against Sgt. Ciorciari;  C.O. Rossy and First Amendment retaliation claim against Sgt. Barg relating to the alleged March 23, 2015 shoving incident be dismissed with prejudice for failure to exhaust administrative remedies.[8]  See Berry, 366 F.3d at 87-88; Richard, 2019 WL 5197041, at *9.

---

[8]  Plaintiff's IGP log from Five Points, attached as an exhibit to Schultz's declaration, indicates that he filed a grievance concerning his missing legal work on May 1, 2015, see Dkt. No. 61-18 at 6, and defendants do not contend that plaintiff failed to exhaust his administrative remedies with respect to his retaliation claim based on Sgt. Barg's refusal to allow plaintiff to take his draft bag on the  transfer bus during his April 21, 2015 transfer from Eastern C.F. to Five Points C.F.  See Dkt. No. 61-20 at 23-26.

**C. Sgt. Ciorciari's Personal Involvement**

As an initial matter, although not raised by defendants, plaintiff has failed to establish Sgt. Ciorciari's personal involvement in the alleged constitutional violations. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). Thus,"[i]n order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant." Greene v. Walsh, No. 9:05-CV-00327 (TJM/DE), 2008 WL 4517975, at *5 (N.D.N.Y. Sept. 29, 2008).

Here, defendants' admissible evidence establishes that Sgt. Ciorciari was not involved with the March 20, 2015 incident, did not issue plaintiff the misbehavior report relating to that incident, and did not conduct the ensuing investigation or participate with respect to that incident in any way; rather, as defendants' documentary evidence make clear, C.O. Arnott witnessed the March 20, 2015 altercation and issued plaintiff the misbehavior report relating thereto, and that Sgt. Menard and Lt. Sullivan were involved in the ensuing investigation—not Sgt. Ciorciari. See Dkt. No. 61-10 at 2, 6, 7, 9. Sgt. Ciorciari acknowledges that he issued plaintiff a misbehavior report on March 23, 2015, for solicitation of sexual activity and stalking of another inmate. See Dkt. No. 61-9 at 2 ¶ 12; Dkt. No. 61-11 at 16. However, plaintiff makes no mention of this misbehavior report or any subsequent investigation related thereto in his Amended Complaint or his response or sur-reply to defendants' motion, and does not allege that he ever filed a grievance against Sgt. Ciorciari relating to that misbehavior report; therefore, even

affording plaintiff's <u>pro</u> <u>se</u> submissions a liberal construction, the undersigned concludes that plaintiff has failed to proffer any factual allegations or evidence from which the undersigned can infer any causal nexus between Sgt. Ciorciari's unrelated misbehavior report and plaintiff's claims regarding the purported incidents on March 20 and 23, 2015.  <u>See</u> <u>Greene</u>, 2008 WL 4517975, at *5.  Thus, it is recommended that plaintiff's First and Eighth Amendment claims against Sgt. Ciorciari be dismissed for lack of personal involvement.  <u>See</u> <u>Wright</u>, 21 F.3d 501; <u>Moffitt</u>, 950 F.2d 885.  In any event, as discussed below, plaintiff's claims against Sgt. Ciorciari lack merit.

### D. Merits

In the event that the Court disagrees with the foregoing, it is recommended that plaintiff's claims be dismissed on the merits.

### 1. Sgt. Ciorciari

### a. Eight Amendment Excessive Force

Inmates enjoy an Eighth Amendment protection against the use of excessive force and may recover damages for its violation under § 1983.  <u>Hudson v. McMillian</u>, 503 U.S. 1, 9-10 (1992).  The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain."  <u>Sims v. Artuz</u>, 230 F.3d 14, 20 (2d Cir. 2000) (quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976)).  To establish an Eighth Amendment excessive force claim, a plaintiff must satisfy both objective and subjective elements.  <u>See</u> <u>Blyden v. Mancusi</u>, 186 F.3d 252, 262 (2d Cir. 1999).

31

The objective element is "responsive to contemporary standards of decency" and requires a showing "that the injury actually inflicted [is] sufficiently serious to warrant Eighth Amendment protection." Hudson, 503 U.S. at 8 (internal quotation marks and citation omitted); Blyden, 186 F.3d at 262. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Sims, 230 F.3d at 22 (internal quotation marks, alteration, and citation omitted). However, "the malicious use of force to cause harm[] constitute[s] [an] Eighth Amendment violation *per se*" regardless of the seriousness of the injuries. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (internal quotation marks and citations omitted). "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." Id. at 7.

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Sims, 230 F.3d at 21 (internal quotation marks and citations omitted). Thus, the key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically [to] cause[] harm." Hudson, 503 U.S. at 7 (internal quotation marks and citations omitted); see also Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (Observing that the Supreme Court has emphasized that the nature of the force applied is the "core judicial inquiry" in excessive force cases—"not whether a certain quantum of injury was sustained.") (internal quotation

marks and citation omitted).  In determining whether defendants acted in a malicious or

wanton manner, the Second Circuit has identified five factors to consider:

> the extent of the injury and the mental state of the
> defendant[;] . . . the need for the application of force; the
> correlation between that need and the amount of force used;
> the threat reasonably perceived by the defendants; and any
> efforts made by the defendants to temper the severity of a
> forceful response

Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and

citations omitted).

Here, although plaintiff's Amended Complaint alleges, conclusorily, that Sgt.

Ciorciari "str[uck] [p]laintiff's head" during the interview that allegedly took place on

March 20, 2015 in the nurses' station following plaintiff's fight with another inmate, see

Amen. Compl. at 4, plaintiff expressly testified numerous times at his deposition that

Sgt. Ciorciari never struck him.  See Dkt. No. 61-3 at 67, 76.  Plaintiff also testified that

he was "not claiming [that he] was injured as a result of [his] interactions with [Sgt.]

Ciorciari."  Id. at 105.  Thus, as defendants' documentary evidence and plaintiff's

deposition testimony establish that Sgt. Ciorciari did not use any force against plaintiff,

plaintiff has failed to establish either of the elements of a claim for excessive force.

Accordingly, in the alternative, it is recommended that plaintiff's Eighth Amendment

excessive force claim against Sgt. Ciorciari be dismissed as meritless.


**b. First Amendment Retaliation**

In order to establish a First Amendment retaliation claim under Section 1983, a

prisoner must show the following: that "(1) . . . the speech or conduct at issue was

protected, (2) . . . the defendant took adverse action against the plaintiff, and (3) . . .

there was a causal connection between the protected speech and the adverse action."
Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks and
citations omitted).  "[I]n the prison context . . . adverse action" is "defined . . .
*objectively*[] as retaliatory conduct that would deter a similarly situated individual of
ordinary firmness from exercising . . . constitutional rights."  Gill v. Pidlypchak, 389 F.3d
379, 381 (2d Cir. 2004) (internal quotation marks and citation omitted).  "[T]his objective
test applies even where a particular plaintiff was not himself subjectively deterred; that
is, where he continued to file grievances and lawsuits."  Id.  With respect to the third
element of the test, although "'[a] plaintiff can establish a causal connection that
suggests retaliation by showing that protected activity was close in time to the adverse
action[,]' [s]uch circumstantial evidence of retaliation, . . . without more, is insufficient to
survive summary judgment."  Roseboro v. Gillespie, 791 F. Supp. 2d 353, 370 (S.D.N.Y.
2011) (quoting Espinal, 558 F.3d at 129).

Here, as discussed above in subsection IV.D.1.a., supra, defendants have
established that Sgt. Ciorciari did not take the alleged adverse action of striking plaintiff.
See Dkt. No. 61-3 at 67, 76.  Thus, plaintiff has failed to satisfy the second prong under
Espinal, and defendants are entitled to summary judgment as to his First Amendment
retaliation claim against Sgt. Ciorciari.  See Espinal, 558 F.3d at 128.  Accordingly, it is
alternatively recommended that plaintiff's First Amendment retaliation claim against Sgt.
Ciorciari be dismissed as meritless.

### c. Fourteenth Amendment Equal Protection

The Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005) (quoting LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980)) (emphasis omitted).  To establish a claim for denial of equal protection, a plaintiff generally must demonstrate "purposeful discrimination . . . directed at an identifiable or suspect class." Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995) (internal citation omitted).  If an inmate is unable to establish membership in a protected class, "the Supreme Court has recognized 'class of one' claims, where the plaintiff must prove that he was intentionally treated differently from others similarly situated without a rational basis for the difference in treatment." Fortunatus v. Clinton County, N.Y., 937 F. Supp. 2d 320, 337, (N.D.N.Y. 2013) (citing Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).

"[V]erbal harassment, standing alone, does not amount to a constitutional deprivation."  Cole v. Fischer, 379 F. App'x 40, 43 (2d Cir. 2010) (summary order); see Aziz Zarif Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("[V]erbal harassment . . . alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." (internal quotation marks and citation omitted)); Hurdle v. Ackerhalt, No. 92-CV-1673 (TJM), 1993 WL 71370, at *1 (N.D.N.Y. Mar. 8, 1993) ("[T]hreats and harassment do not rise to the level of a Constitutional violation, and thus [such] claims are not

cognizable under 42 U.S.C. § 1983.).  However, "[c]ourts in this circuit . . . have held that officers' use of racial epithets may be regarded as direct evidence of racial animus and, when combined with physical abuse or other unlawful actions, may establish an equal protection violation."  Ali v. Connick, 136 F. Supp. 3d 270, 279-80 (E.D.N.Y. 2015); see Cole, 379 F. App'x 40, 43 (2d Cir. 2010) (summary order) ("When the verbal harassment and simultaneous physical abuse alleged in the amended complaint are considered together, we have little trouble concluding that plaintiff's allegations were sufficient to state a § 1983 claim for discrimination on the basis of race and religion.").

Here, plaintiff alleges that Sgt. Ciorciari noted that plaintiff was a black man, and used homophobic epithets, such as "faggot," "fag," and "homo," and threatened to tell gang members that plaintiff was incarcerated for a sex crime so that they would "slice and dice him."  Amen. Compl. at 5.  However, as defendants have established through admissible evidence, and plaintiff has not controverted, even assuming Sgt. Ciorciari made such statements or threats to plaintiff, they were not accompanied by any "physical abuse or other unlawful actions."  Ali, 136 F. Supp. 3d at 280; see subsection IV.D.1.a., supra.  Accordingly, in the alternative, it is recommended that plaintiff's Fourteenth Amendment Equal Protection claim against Sgt. Ciorciari be dismissed as meritless.

## 2. Claims Against Sgt. Barg

### a. March 23, 2015 Incident

To the extent that plaintiff's First Amendment claim against Sgt. Barg based on his allegedly retaliatory act of hitting or shoving plaintiff on March 23, 2015, is not

deemed untimely or unexhausted, it is recommended that plaintiff's claim be dismissed on the merits.  As an initial matter, plaintiff's first claim against Sgt. Barg is premised entirely on Sgt. Barg's alleged conduct of retaliatorily hitting or shoving plaintiff while "demonstrate[ing]" Sgt. Ciorciari's alleged use of force against plaintiff.  See Amen. Compl.at 5.  However, as discussed in detail above, defendants have established entitlement to summary judgment dismissing plaintiff's Eighth Amendment excessive force claim against Sgt. Ciorciari, in part, based on plaintiff's acknowledgement that Sgt. Ciorciari never struck him; therefore, the undersigned concludes that plaintiff cannot premise his retaliation claim against Sgt. Barg on his alleged conduct of reenacting a use force that defendants' have proved did not occur.  See subsection IV. D.1.a., supra. Further, Sgt. Barg explained in his declaration that he would not have investigated any complaints of misconduct plaintiff may have had against Sgt. Ciorciari, as they he and Sgt. Ciorciari held the same rank, and, pursuant to DOCCS Directive 4040, "'investigations of staff misconduct be carried out by 'higher ranking supervisory personnel.'"  Dkt. No. 61-5 at 2 ¶ 11 (quoting N.Y. COMP. CODES R. & REGS. tit. 7, § 701.8(d)(1)); see Dkt. No. 61-20 at 17 n.3.  Therefore, to the extent plaintiff contends that Sgt. Barg struck or shoved him while "demonstrating" the alleged force used by Sgt. Ciorciari, his claims are belied by defendants' admissible evidence.  In any event, Sgt. Barg stated in his declaration that, at the time he interviewed plaintiff, he "was not aware that [p]laintiff had filed a complaint against [Sgt.] Ciorciari."  Dkt. No. 61-5 at 3 ¶ 19. Plaintiff's conclusory assertions in opposition that he "strongly disagree[s]" with defendants' contention that plaintiff suffered no injury from his interaction with Sgt. Barg on March 23, 2015, and that this purported "traumatic event has life[-]long

37

ramifications," Dkt. No. 65 at 1, are insufficient to demonstrate a triable issue of fact.

See Batista v. Union of Needleworkers, No. 97-CV-4247 (HB), 2000 WL 1760923, at *3

(S.D.N.Y. Nov. 30, 2000) (holding that the plaintiff's "conclusory statements" offered "in

response to [the] defendant's evidence" were "insufficient as a matter of law to raise an

issue of fact."); see also Scott, 344 F.3d at 287 ("Conclusory allegations or denials are

ordinarily not sufficient to defeat a motion for summary judgment when the moving party

has set out a documentary case.").  Consequently, should the Court find that this claim

is not time-barred, and that plaintiff exhausted his administrative remedies with respect

thereto, it is recommended, in the alternative, that this claim be dismissed on the merits.

### b. April 21, 2015 Incident

Insofar as plaintiff also alleges that Sgt. Barg violated his First Amendment rights

by refusing to allow plaintiff to carry his draft bag containing legal materials on the bus

to Five Points C.F. on April 21, 2015, or tampered with that bag, in retaliation for

plaintiff's purported verbal complaint about Sgt. Ciorciari, see Amen. Compl. at 5, 7, it is

recommended that his claim be dismissed as without merit.

"[P]risoner retaliation claims are easily fabricated, and . . . pose a substantial risk

of unwarranted judicial intrusion into matters of general prison administration."  Bennett

v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks and citations

omitted).  Accordingly, the Second Circuit requires courts to "examine prisoners' claims

of retaliation with skepticism and particular care."  Colon v. Coughlin, 58 F.3d 865, 872

(2d Cir. 1995).  Thus, "a plaintiff asserting such a claim bears a heightened burden of

proof and must plead the claim with particularity."  Green v. Phillips, No. 04-CV-10202

(TPG), 2006 WL 846272, at *3 (S.D.N.Y. Mar. 31, 2006) (citing Brown v. Middaugh, 41 F. Supp. 2d 172, 191 (N.D.N.Y. 1999)).  Consequently, a plaintiff must set forth non-conclusory allegations to sustain a retaliation claim.  See Green, 2006 WL 846272, at *3; see also Williams v. Goord, 111 F. Supp. 2d 280, 290 (S.D.N.Y. 2000) ("In recognition of the reality that retaliation claims can be fabricated easily, plaintiffs bear a somewhat heightened burden of proof, and summary judgment can be granted if the claim appears insubstantial." (internal quotation marks and citation omitted)). Allegations, although specific, "may still be deemed conclusory if [they are] (1) largely unsubstantiated by any other direct evidence and (2) so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint."  Smith v. Woods, No. 9:03-CV-480 (DNH/GHL), 2006 WL 1133247, at *3 (N.D.N.Y. Apr. 24, 2006) (internal quotation marks and citations omitted).  Furthermore, "[e]ven if plaintiff makes the appropriate showing of retaliation, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct."  Brooks, 2014 WL 1292232, at *18 (citation omitted); see Scott, 344 F.3d at 287-88 ("Regardless of the presence of retaliatory motive,  . . . a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." (italics omitted)).

Here, the documentary evidence establishes that, regardless of retaliatory motive, Sgt. Barg did not allow plaintiff to carry a fifth draft bag on the bus for the proper, nonretaliatory reason that it was in excess of the number of bags permitted

39

pursuant to DOCCS Directive 4917.  See Dkt. No. 61-5 at 4 ¶¶ 26-28; Dkt. No. 65 at 7.

In particular, attached to Sgt. Barg's declaration is a copy of DOCCS Directive 4917,

dated September 13, 2013, which states, in relevant part, that "[i]nmates transferred

from one correctional facility to another are allowed to transport up to four bags of

personal property."  Dkt. No. 61-7 at 2.  An exception was provided where "[a]n inmate

with excessive legal material may possess one additional draft bag of legal materials

upon demonstrating that such material pertains to active legal cases by providing court

names and numbers."  Id.  In such a case, "[i]n preparation for transfer, an inmate who

possesses an additional bag of personal property containing authorized legal materials

may select which bags will be transported via State transportation and which bag will be

shipped at the inmate's expense."  Id.  Moreover, DOCCS Directive 4917, dated

September 13, 2013, stated that "[d]raft bags measuring approximately 22" x 43" or

having a 100 lb. capacity designation may be used as long as they are serviceable."  Id.

at 3.  As Sgt. Barg explained in his declaration, on April 21, 2015, he ordered plaintiff to

remove one of his five bags pursuant to DOCCS Directive 4917, as plaintiff "did not

seek permission from Eastern C.F. administration to allow him to travel with the fifth

draft bag as required under [the] Directive . . . ."  Dkt. No. 61-5 at 4 ¶ 28.  Further, as

Sgt. Barg stated, see id., plaintiff was permitted to travel with the allowed number of four

draft bags.  See Dkt. No. 61-8 at 2 (Form 2063, indicating that, on April 21, 2015,

plaintiff brought four bags of personal property with him on the bus to Five Points C.F.).

Plaintiff does not state in any of his submissions that he sought prior approval from the

administration at Eastern C.F. to bring a fifth draft bag on the transfer bus to Five Points

C.F., as required by DOCCS Directive 4917.  See Amen. Compl. at 5, 7; Dkt. No. 65 at

1-2; Dkt. No. 67 at 1-2.  Moreover, to the extent that plaintiff points to the portion of
DOCCS Directive 4917, which provides the dimensional characteristics and weight
capacity of compliant draft bags, in support of his contention that Sgt. Barg improperly
had one of his five draft bags removed as being overweight, his argument is of no
moment.  See Dkt. No. 65 at 2.  Sgt Barg unequivocally stated in his declaration that the
fifth bag was removed because it was beyond the allowable four bag limit and plaintiff
had not properly requested an additional bag—not because of its weight.  See 61-5 at 4
¶ 28.  Insofar as the weight of plaintiff's fifth draft bag is concerned, the documentary
evidence establishes that the bag weighed 88 lbs. and, therefore, in order to be mailed
in compliance with the USPS's 60 lb. weight limit, Sgt. Barg directed facility personnel,
including C.O. Green, to repack the bag into two separate bags to be mailed to Five
Points C.F.  See Dkt. No. id. at 5 ¶¶ 29-30.

Moreover, in their declarations, Sgt. Barg and C.O. Green explicitly deny that
Sgt. Barg ordered anyone to tamper with, or that anyone actually tampered with,
plaintiff's property.  See Dkt. No. 61-5 at 5 ¶¶ 31-32; Dkt. No. 61-16 at 2 ¶¶ 8-9.  As an
initial matter, plaintiff's claim in this regard is based solely on his conclusory assertion
that he discovered "[e]vidence of tampering with [his] [l]egal [b]ag" "due to the fact that it
was shipped as not one [but] two separate bags."  See Amen. Compl. at 7.  However,
plaintiff's documentary evidence undercuts his claim in this regard.  For instance, in
support of his reply in opposition to defendants' motion, plaintiff proffered Sgt.
VanDeweert's memorandum, which stated that, plaintiff left Eastern C.F. on April 21,
2015; Sgt. VanDeweert "transported 4 property bags plus one mail bag of legal work
from SHU to the cage"; and that plaintiff's "mail bag was over the 60lb weight limit and

weighed 88lbs.[,]" so "Sgt. Barg instructed [Sgt. VanDeweert] to return the bag to SHU to be repacked into 2 bags." Dkt. No. 65 at 4. Further, the memorandum establishes that, "[o]n 4/30/15 Sgt. Leifeld contacted C.O. Green and instructed him to retrieve the mail bag from SHU and repack it into two bags because it was not done previously[,]" and that "[o]n 5/1/15 the 2 bags of legal were mailed from Eastern C.F. to Five Points C.F." Id. In addition, plaintiff proffered a DOCCS Claim Investigation Report (370-0092-15), authored by Lt. DiCiarano at Eastern C.F., dated June 28, 2015, which states that Lt. DiCiarano called Five Points C.F. on June 18, 2015, "and spoke with C.O. Cheisman who confirmed that the mailed bags of [plaintiff's] legal work was [sic] received at Five Points on May 7, 2015." Id. Plaintiff's conclusory assertions that his property was tampered with fail to raise a triable issue of fact. See Green, 2006 WL 846272, at *3. Accordingly, in the alternative, it is recommended that plaintiff's First Amendment retaliation claim against Sgt. Barg relating to his draft bag be dismissed as meritless.

### 3. Claims Against C.O. Rossy

Insofar as the Court does not agree that plaintiff's First Amendment retaliation claim against C.O. Rossy is untimely or finds that plaintiff exhausted his administrative remedies with respect thereto, it is alternatively recommended that this claim be dismissed as without merit. As an initial matter, contrary to plaintiff's contentions that C.O. Rossy conducted a cell frisk of plaintiff's cell and issued plaintiff a misbehavior report in retaliation for plaintiff's lodging a complaint against Sgt. Barg, C.O. Rossy denies having knowledge of any incident between plaintiff and Sgt. Barg, or of any complaint plaintiff filed against Sgt. Barg. See Dkt. No. 61-12 at 3 ¶ 14. Further, C.O.

Rossy's misbehavior report explicitly states that the March 31, 2015 cell frisk was "authorized by Lt. Simmons." Dkt. No. 61-13 at 7.  In addition, defendants' documentary evidence establishes that plaintiff and C.O. Rossy signed an Authorization For Disposal of Personal Property form, dated March 31, 2015, in which plaintiff consented to the destruction of his excess personal shirts and magazines, see Dkt. No. 61-15 at 2, and C.O. Rossy states that no other property was destroyed.  See Dkt. No. 61-12 at 3 ¶ 13.  Thus, defendants have established that plaintiff's excess personal shirts and magazines were destroyed at his consent and pursuant to DOCCS policies—not for retaliatory reasons.  See id.

To the extent the Amended Complaint may be read as contending that C.O. Rossy destroyed property or wrote plaintiff a misbehavior report in retaliation for finding a letter plaintiff had drafted to the OSI, plaintiff's argument is belied by defendants' admissible evidence.  See Amen. Compl. at 5, 7.  C.O. Rossy discovered "determined" that the envelopes she discovered in plaintiff's cell during her March 31, 2015 cell frisk "were for use by facility staff only," and that one contained "an open prophylactic," which plaintiff was not authorized to possess.  See Dkt. No. 61-12 at 2 ¶ 10.  In addition, C.O. Rossy's misbehavior report explicitly lists the items of contraband discovered in plaintiff's cell on March 31, 2015, including the envelope containing an open prophylactic and four "envelopes for personnel use only," which she "secured in [the] west wing court office contraband locker per Directive 4910A."  Dkt. No. 61-13 at 7.  Moreover, C.O. Rossy's declaration makes clear that she issued plaintiff a misbehavior report because, during the cell frisk, she discovered extensive amounts of contraband, "and not for any other reason."  Dkt. No. 61-12 at 3 ¶ 12; see Dkt. No. 61-13 at 7.

43

Plaintiff's conclusory allegations to the contrary, including that C.O. Rossy discovered and confiscated a letter addressed to the OSI, are contradicted by defendants' admissible evidence and fail to raise a genuine issue of material fact.  See Scott, 344 F.3d 2 at 287.  Accordingly, in the alternative, it is recommended that plaintiff's First Amendment retaliation claim against C.O. Rossy be dismissed on the merits.

Based on the foregoing, because the undersigned has recommended numerous alternative bases upon which plaintiff's claims may be dismissed, the undersigned declines to consider defendants' additional arguments, including qualified immunity and that plaintiff's failure to respond to certain arguments in opposition to defendants' motion should render certain of defendants' arguments unopposed.  Thus, it is recommended that defendants' motion for summary judgment be granted in its entirety, and that plaintiff's Amended Complaint be dismissed, in its entirety, with prejudice.

## V. Conclusion

 **WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that defendants' Motion for Summary Judgment (Dkt. No. 61) be **GRANTED IN ITS ENTIRETY**; and it is further

**RECOMMENDED**, plaintiff's Amended Complaint (Dkt. No. 26) be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 6(a), 6(e), 72.[9]

Dated: January 12, 2021
　　　 Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[9]  If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(C).